UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP,**  Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-6235** |
| **VALLEY FORGE INSURANCE CO.,**  Defendant | **SECTION: "E" (1)** |

## ORDER AND REASONS

Before the Court is a Motion to Compel Arbitration and Stay Litigation (the "Motion to Compel") filed by Defendant Valley Forge Insurance Co. ("Defendant" or "Valley Forge").[1] Plaintiff Peiffer Wolf Carr Kane Conway & Wise, LLP ("Plaintiff" or "Peiffer Wolf") filed an opposition.[2] Valley Forge replied.[3]

## BACKGROUND

This case arises from a dispute over a commercial general liability insurance policy (the "Policy") issued by Defendant Valley Forge, an Illinois-based insurer, to Plaintiff Peiffer Wolf, a Louisiana-based law firm.[4] The Policy was negotiated by Peiffer Wolf employees in New Orleans through and with an insurance agent based in Metairie, Louisiana, and was issued by Valley Forge's New Orleans branch to Peiffer Wolf's main office located in New Orleans.[5]

On May 5, 2023, law firm Levin Simes, LLP filed a complaint in the Superior Court of the State of California in and for the County of San Francisco (the "Levin Simes

---

[1] R. Doc. 12.
[2] R. Doc. 17.
[3] R. Doc. 18.
[4] R. Doc. 5 at p. 1.
[5] R. Doc. 17 at p. 3.

1

Lawsuit") against Peiffer Wolf and its partners, Rachel Abrams and Brian Perkins.[6] Peiffer Wolf tendered that complaint to its insurer, Valley Forge, for defense and indemnity claiming the alleged conduct underlying the Levin Simes Lawsuit falls within coverage of the Policy issued to Peiffer Wolf by Valley Forge.[7] On July 31, 2023, Valley Forge "acknowledged, subject to a reservation of rights, that it owed [Peiffer Wolf] a defense against the Levin Simes Lawsuit" under the Policy.[8] The parties disagree over the extent of Defendant's responsibility for funding Plaintiff's defense in underlying litigation.

On October 19, 2023, Peiffer Wolf filed its amended complaint in this Court alleging Valley Forge improperly refused to pay hourly rates charged by its California independent defense counsel,[9] "and instead assert[ed], falsely that [Defendant's] payment obligations are 'capped' at the rates it pays to its 'panel counsel[,]' [which] are far less than the reasonable rates charged by [the] [independent] [d]efense [c]ounsel."[10] Peiffer Wolf asserts claims against Valley Forge for declaratory judgment "confirming Valley Forge is obligated to pay and/or reimburse Peiffer Wolf, and Abrams/Perkins, for the reasonable defense costs each incurs in defense of the Levin Simes Lawsuit,"[11] breach of contract,[12] and penalties and damages for violating Louisiana Revised Statutes §§

---

[6] R. Doc. 5 at p. 3.
[7] *Id*. at pp. 2-3. The parties agree Valley Forge Insurance Company issued Businessowner's General Liability Policy No. 5094664591 to Peiffer Wolf Carr Kane Conway & Wise, LLP for the policy period between October 3, 2022 and October 3, 2023. *See id.* at p. 2; R. Doc. 13 at p. 2.
[8] R. Doc. 5 at p. 3; *see also* R. Doc. 12-1 at p. 5 (describing the grounds under which Defendant reserved its rights).
[9] Plaintiff contends "[b]ecause [Defendant] has reserved its rights to deny coverage under the Policy, [it] is required to provide independent defense counsel" for Plaintiff. *Id.* at p. 4. Defendant, however, contends whether it is required to furnish independent counsel depends on whether California or Louisiana law applies. *See* R. Doc. 13 at p. 7.
[10] R. Doc. 5 at p. 4.
[11] *Id.* at p. 5.
[12] *Id.* at p. 6 (claiming Defendant has "breached (and will continue to breach) the Policy by failing to perform the obligations it owes under the Policy").

22:1892 and 22:1973.[13] On January 14, 2024, Valley Forge filed the instant motion to compel this litigation be arbitrated in accordance with California law.[14]

## **LEGAL STANDARD**

As both parties have acknowledged, "[f]ederal courts sitting in diversity must apply the choice-of-law rules of the state in which they are located."[15] Thus, the Court will apply Louisiana conflicts law to determine whether Louisiana or California substantive law governs the parties' fee dispute. Louisiana Civil Code article 3515 contains the general principles for choice of law issues under Louisiana law:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of:
>
>> (1) the relationship of each state to the parties and the dispute; and
>> (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.[16]

Civil Code article 3537 provides the general rule for choosing the law applicable to conventional obligations, including those created under insurance policies:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of:

---

[13] *Id.* at pp. 6-8
[14] R. Doc. 12.
[15] *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 250 (5th Cir. 1994) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)). The parties agree Louisiana choice-of-law rules govern the Motion to Compel. *See* R. Docs. 12 & 17.
[16] La. Civ. Code art. 3515.

> (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties;
>
> (2) the nature, type, and purpose of the contract; and
>
> (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[17]

## **LAW AND ANALYSIS**

Defendant Valley Forge argues that, applying Louisiana choice of law principles, California law governs this dispute, and that California law requires arbitration of any dispute concerning independent counsel's fees.[18] Defendant contends that, because it defended Plaintiff in the Levin Simes Lawsuit in California "the place of performance [of the contract] was unquestionably California," and thus California law should govern.[19] Defendant further claims the parties "clearly contemplated" Valley Forge's performance of the contract in California when the Policy was issued, because "Peiffer [Wolf] has an office in California and provides legal services within the state."[20]

In opposition, Plaintiff Peiffer Wolf argues that Louisiana law, which does not allow arbitration, applies to this dispute.[21] Plaintiff contends "the policy was negotiated in Louisiana, delivered from one Louisiana office (the insurer) to another (the insured),

---

[17] La. Civ. Code art. 3537.
[18] R. Doc. 12-1 at p. 3 (citing Cal. Civ. Code § 2860(c) ("Any dispute concerning [independent counsel's] fees . . . shall be resolved by final and binding arbitration . . . .")).
[19] *Id.* Citing *Hartford Underwriters Ins. Co. v. Foundation Health Servs., Inc.*, 524 F.3d 588 (5th Cir. 2008), Defendant argues that "Plaintiff would have no viable cause of action under Louisiana law to select independent counsel and compel Valley Forge to reimburse it for fees incurred from Peiffer [Wolf]'s selected independent counsel." *Id.* at p. 13. This Order and Reasons does not address that argument, as the basis of Defendant's Motion to Compel is the parties' dispute over what amount is owed under the Policy, rather than whether independent counsel was necessary in this case.
[20] *Id.* at p. 13.
[21] R. Doc. 17 at p. 1.

4

and paid for in Louisiana," and thus Louisiana substantive law applies.[22] Further, Plaintiff claims the parties did not contemplate the possibility that California law would govern the contract because the Policy contains several Louisiana-specific disclosures and endorsements, and does not contain any endorsements regarding any other state.[23]

### I. Louisiana public policy disfavors compulsory arbitration to resolve issues related to insurance contracts.

"The first step in determining which state's law applies under [articles 3515 and 3537] is to identify the policies involved for each state."[24] Article 3515 advises courts to consider "the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state."[25] When confronting a conflict of law related to conventional obligations, article 3537 instructs courts to additionally consider "the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[26]

"The law of a state and its public policy are not necessarily synonymous. Not every law enacted by the legislature embodies the 'public policy' of the state."[27] In fact, the official comments to Article 3540 note "only strongly held beliefs of a particular state qualify for the characterization of 'public policy.'"[28] For example, in *O'Hara v. Globus Medical, Inc.*, the Louisiana First Circuit held application of Pennsylvania law, which allows for noncompete agreements between employers and employees, would violate

---

[22] *Id.*
[23] *Id.* at p. 3 (citing Policy, R. Doc. 12-5).
[24] *Abraham v. State Farm Mut. Auto Ins. Co.*, 465 F.3d 609, 612 (5th Cir. 2006).
[25] La. Civ. Code art. 3515.
[26] La. Civ. Code art. 3537.
[27] *Cherokee Pump & Equip.*, 38 F.3d at 252; *see also Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 669 F.2d 1049, 1058 ("One state's law does not violate another state's public policy merely because the law of the two states differ.").
[28] *Cherokee Pump & Equip.*, 38 F.3d at 252 (quoting La. Civ. Code art. 3540 cmt. f).

5

Louisiana's strong public policy against enforcement of such provisions.[29] The applicable Louisiana statute expressly provides noncompete agreements "shall be null and void" and a "choice of law clause in an employee's contract . . . shall be null and void."[30] Moreover, this policy had a strong basis in "an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden."[31] In *Robinson v. Robinson*, the Louisiana Supreme Court refused to apply a North Carolina choice-of-law provision in a property settlement agreement between a divorcing couple because North Carolina law would frustrate Louisiana's strong public policy in community property.[32] The court noted "community property laws are for the purpose of recognizing the non-financial contributions of the non-employed spouse to the family's well-being," and "[a] husband may not divest a wife of her interest in property by choosing a state law that may benefit his interests to the detriment of his spouse."[33]

In this case, Defendant contends California has a "strong legislative policy favoring arbitration of Cumis counsel fee disputes expressed in the mandatory arbitration provision of Section 2860(c)."[34] Defendant, however, offers no support for its argument that the California provision requiring arbitration to resolve disputes concerning independent counsel's fees constitutes a strongly held belief or public policy of the State of California. Instead, Defendant claims "California clearly has an interest in preventing

---

[29] *O'Hara v. Globus Med., Inc.*, 2014-1436, pp. 16-18 (La. App. 1 Cir. 8/12/15), 181 So. 3d 69, 80-81.
[30] *Id.* at p. 16, 181 So. 3d at 80 (quoting La. Rev. Stat. § 23:921(A) (2015)).
[31] *Id.* at p. 17, 181 So. 3d at 81.
[32] *Robinson v. Robinson*, 1999-3097, pp. 11-12 (La. 1/17/01), 778 So. 2d 1105, 1116-18.
[33] *Id.* at pp. 11-12, 778 So. 2d at 1117.
[34] R. Doc. 18 at p. 4 (citing *Behnke v. State Farm General Ins. Co.*, 196 Cal. App. 4th 1443, 1461-62 (2011); *Wallis v. Centennial Insurance Co.,* 982 F. Supp. 2d 1114, 1121-1123 (E.D. Cal. 2013); *Fontana Union Water Co. v. Arch Insurance Co.,* 2016 WL 9045966, at *2 (C.D. Cal., Apr. 13, 2016)).

excessive fee rates for counsel selected by insureds at the expense of the insurer."[35] While this may be true, it is irrelevant to the mandatory arbitration statute at issue. Not every state law embodies the public policy of the state, and Defendant has not met its burden of proving the application of Louisiana law violates the public policy of California.[36]

Plaintiff, on the other hand, notes that Louisiana law forbids insurance policies "issued within, or covering subjects located, resident, or to be performed in this State" from requiring arbitration.[37] Under Louisiana law, "[n]o insurance contract delivered or issued for delivery in [Louisiana] and covering subjects located [in Louisiana] . . . shall contain any condition, stipulation, or agreement . . . depriving the courts of [Louisiana] of the jurisdiction of action against the insurer."[38] As a matter of public policy, it is clear that Louisiana disfavors compulsory arbitration clauses to resolve disputes related to insurance contracts because compelling arbitration "den[ies] Louisiana citizens of free access to its courts, a right guaranteed by the state's constitution."[39] Indeed, Louisiana Revised Statutes 22:868(A)(2) facilitates the protection of insured parties from the undue imposition of insurers by prohibiting insurance policies from requiring arbitration.[40] Plaintiff argues that applying California law to compel arbitration would seriously impair "Louisiana's interests in preserving its jurisdiction to police disputes like this one" by depriving Plaintiff of its right to trial in a Louisiana court.[41] The Court agrees that

---

[35] *Id.*
[36] *See Cherokee Pump & Equip.*, 38 F.3d at 252 (holding the party challenging a choice-of-law provision had not met its burden when that party produced no authority expressing a strongly held belief in the relevant portion of Louisiana law and that law itself did not indicate a strongly held belief).
[37] R. Doc. 17 at p. 13 (citing La. R.S. 22:868(A)(2)).
[38] La. R.S. 22:868(A)(2).
[39] *Courville v. Allied Professionals Ins. Co.*, 2016-1354, p. 5 (La. App. 1 Cir. 4/12/17), 218 So. 3d 144, 148 (citing La. Const. art. I, § 22; La. R.S. 22:868(A)(1)(2); *Hobbs v. IGF Ins. Co.*, 02-26 (La. App. 3 Cir. 10/23/02), 834 So.2d 1069, 1071; *Dore v. Shelter Mut. Ins. Co.*, 13-0545 (La. App. 1 Cir. 11/1/13), 2013 WL 5915141, *2, n.2).
[40] R. Doc. 17 at p. 13 (citing La. R.S. 22:868(A)(2)).
[41] *Id.*

compelling arbitration in this case would similarly impair Louisiana's public policy that promotes the right of Louisiana plaintiffs to resolve insurance disputes in Louisiana courts.

### II. Louisiana is the state with the closest relationship to the parties and the insurance contract at issue.

"To determine which state's interests control in this case[,] [the Court] next evaluates them in light of each state's relationship to the parties and the dispute."[42] Article 3515 advises courts to consider "the relationship of each state to the parties and the dispute,"[43] which, for conflict issues related to conventional obligations includes a consideration of "the pertinent contacts of each state to the parties and the transaction, [] the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties." [44]

While Louisiana does not apply the *lex loci contractus* rule,[45] courts applying Louisiana choice of law rules to similar cases have recognized that parties "do not change their mutual intent to be governed by the laws of their own states simply by the fortuity of suffering an accident" in another state.[46] For example, in *Abraham v. State Farm Mutual Automobile Insurance Co.*, the Fifth Circuit applied articles 3515 and 3537 to determine whether Mississippi or Louisiana substantive law governed a dispute in which the victim of an automobile accident asserted a claim for Louisiana statutory bad faith

---

[42] *Abraham*, 465 F.3d at 612 (citing La. Civ. Code. arts. 3515, 3537, & 3537 cmt. d).
[43] La. Civ. Code art. 3515.
[44] La. Civ. Code art. 3537.
[45] La. Civ. Code art. 3537, Rev. Comments, 1991, cmt. b.
[46] *See Walker ex rel. Walker v. State Farm Mut. Auto. Ins. Co.*, 42,051-CA, p. 9 (La. App. 2d Cir. 4/4/07); 954 So. 2d 847, 853.

penalties against his uninsured motorist policy carrier.[47] In analyzing the competing states' connections to the dispute, the Fifth Circuit noted that the plaintiff was a Mississippi resident, the insurance contract was formed in Mississippi and issued by a Mississippi agent, the vehicle was registered in Mississippi, and the insurance policy was a Mississippi contract.[48] Conversely, the accident occurred in Louisiana, the Louisiana Department of Public Safety responded to the accident, the case involved Louisiana state and federal courts, and the plaintiff received medical care in Louisiana.[49] The Fifth Circuit ultimately held that Mississippi law applied because the state's "policy interest in upholding the justified expectations of the parties to Mississippi insurance contracts" outweighed Louisiana's competing interests.[50]

Similarly, in *NOLA Ventures, LLC v. Upshaw Insurance Agency, Inc.*, a court in this district applied Louisiana choice of law principles to determine whether Missouri or Louisiana law applied to a dispute in which Louisiana-based restaurant franchisees asserted a claim for statutory damages against their insurer related to an insurance claim for storm damage to property located in Missouri.[51] In evaluating the states' connections to the dispute, Chief Judge Brown noted that the three plaintiffs were Louisiana citizens, the policy was delivered in Louisiana, the premium payments were paid from Louisiana, and the policy proceeds were paid by the insurer to the plaintiffs in Louisiana.[52] In contrast, Missouri's only connection to the dispute was that it was where the injury to plaintiffs' restaurants occurred.[53] The court ultimately found that, like *Abraham*, "the

---

[47] 465 F.3d at 610.
[48] *Id.* at 612-13.
[49] *Id.*
[50] *Id.* at 614.
[51] 932 F. Supp. 2d 743 (E.D. La. 2013).
[52] *Id.* at 754.
[53] *Id.*

9

location of the accident [was] insufficient to trigger the application of a state's laws," and applied Louisiana substantive law.[54]

In this case, Louisiana has many of the same connections to the dispute as it did in *NOLA Ventures* and as did Mississippi in *Abraham*. Plaintiff Peiffer Wolf is a resident of Louisiana.[55] The Policy was negotiated by Peiffer Wolf employees in New Orleans with an insurance agent based in Metairie, Louisiana.[56] The Policy was issued by Valley Forge out of its New Orleans branch located in Metairie.[57] The Policy was issued to Peiffer Wolf as "named insured" at the law firm's main office and headquarters located in New Orleans.[58] Additionally, the Policy contains several Louisiana-specific disclosures and endorsements, and does not contain any endorsements regarding any other state.[59] Conversely, California's only connection to this dispute is that it is the location of the forum in which Plaintiff incurred unremitted costs associated with independent counsel's defense of the Levin Simes Lawsuit and the forum in which Defendant's duty to defend arose. Like the *Abraham* and *NOLA Ventures* courts, this Court finds the location of the underlying litigation in California is insufficient to trigger the application of California law. The Court finds that Louisiana's policy interests would be most seriously impaired if its law were not applied.

### III. The parties reasonably expected Louisiana law would apply.

Finally, Article 3515 instructs courts to consider "the policies of upholding the justified expectations of parties."[60] Given that the insurance contract covers a Louisiana-

---

[54] *Id.*
[55] *See* R. Doc. 17 at p. 3; Amended Complaint, R. Doc. 5 at p. 1.
[56] R. Doc. 17 at p. 3.
[57] *Id.*
[58] *Id.* (citing Declaration of Kevin P. Conway, R. Doc. 17-1; Policy, R. Doc. 12-5).
[59] *Id.* (citing Policy, R. Doc. 12-5).
[60] La. Civ. Code art. 3515.

10

based law firm, was negotiated in Louisiana, and delivered from one Louisiana office to another, the Court finds that it was reasonable for the parties to expect Louisiana law governs any dispute over the contract. As discussed, the relationship between the State of California, the parties, and/or the insurance contract is limited to the fact that it is the location of the Levin Simes Lawsuit. Like *Abraham* and *NOLA Ventures*, this connection, alone, is insufficient to demonstrate the parties maintained any justified expectation that California law would govern a dispute over the Policy.

Accordingly, upon deliberation of the policy considerations raised in articles 3515 and 3537, the Court finds that the parties had no reasonable justification for expecting California law would apply when the parties negotiated the contract in Louisiana.

## CONCLUSION

For the foregoing reasons, Louisiana substantive law applies to this dispute and California Civil Code § 2680(c) does not apply.

Accordingly;

**IT IS ORDERED** that Valley Forge's Motion to Compel Arbitration and Stay Litigation is **DENIED**.[61]

**IT IS FURTHER ORDERED** that Valley Forge's Motion for Protective Order Staying Discovery Pending Resolution of its Motion to Compel is **DENIED AS MOOT**.[62]

**New Orleans, Louisiana, this 16th day of April, 2024.**

                                                 *Susie Morgan*
                                               **SUSIE MORGAN**
                                 **UNITED STATES DISTRICT JUDGE**

---

[61] R. Doc. 12.
[62] R. Doc. 21.