| | |
|---|---|
| **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP,** | **CIVIL ACTION NO. 2:23-CV-06235** |
| *Plaintiff* | **JUDGE SUSIE MORGAN** |
| V. | |
| **VALLEY FORGE INSURANCE COMPANY,** | **MAGISTRATE JUDGE EVA J. DOSSIER** |
| *Defendant* | |

### VALLEY FORGE INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE, OR IN THE ALTERNATIVE, LIMIT EXPERT OPINION TESTIMONY OF ANDRÉ E. JARDINI

Plaintiff Peiffer Wolf Carr Kane Conway & Wise, LLP ("Plaintiff") filed a Motion in Limine (Rec. Doc. 98) asking the Court to exclude, or in the alternative, limit the testimony of André E. Jardini as an expert for Defendant Valley Forge Insurance Company ("Valley Forge").

Plaintiff first asks the Court to exclude Mr. Jardini from testifying at trial because he was purportedly not made available for deposition until after the expert deposition deadline. That is patently false. Undersigned counsel informed Plaintiff's counsel that Mr. Jardini was available to be deposed within the deadline, but Plaintiff's counsel was not available on the date that was offered. Consequently, the parties amicably (at least as it appeared to Valley Forge) agreed to depose both rate experts, Mr. Jardini and Mr. Pearl, on the same day two days outside of the deadline. This line of attack is therefore baseless and ultimately irrelevant because Plaintiff deposed Mr. Jardini and had sufficient time to file its *Daubert* motion.[1]

---

[1] Curiously, Plaintiff does not include Mr. Jardini's deposition transcript as an exhibit to its motion, even though the parties received it on October 25, 2024 (the day after Mr. Jardini's deposition and three days before the instant motion was filed). The deposition transcript is attached here as Exhibit 1.

Plaintiff next seeks to exclude Mr. Jardini under Federal Rule of Evidence 702. Mr. Jardini, however, is uniquely qualified to testify in this case as one of the foremost experts on legal fees and rates in California, and his methodology is undeniably sound. Mr. Jardini's expert opinions are based on his specialized experience and the relevant facts of this case. Perhaps most importantly, Valley Forge has put forth Mr. Jardini to counter Plaintiff's own rate expert, Richard M. Pearl, and Valley Forge is not seeking to exclude or limit Mr. Pearl's expert testimony. The Court should deny Plaintiff's motion, allow the competing rate experts to testify, and reserve all challenges for vigorous cross-examination of the experts at trial.

## I. MR. JARDINI SHOULD NOT BE EXCLUDED BASED ON SCHEDULING ISSUES

### A. Background

This Court entered a Scheduling Order on February 29, 2024, setting a jury trial date of December 9, 2024.[2] On August 6, 2024, in response to Plaintiff's request (which Valley Forge did not oppose), the Court extended certain expert discovery deadlines.[3] The Amended Scheduling Order reset "[t]he deadline for the parties to take depositions of experts" from October 1, 2024, to October 21, 2024.[4]

All parties agreed that both rate experts, Mr. Jardini and Mr. Pearl, would need to be deposed; the only matter was when. Counsel for both parties were coordinating deposition schedules for Mr. Jardini, Mr. Pearl, and various other witnesses to be deposed in October. On October 14, 2024, however, after Valley Forge's counsel assured Plaintiff's counsel on October 7,

---

[2] Rec. Doc. 20.

[3] Rec. Doc. 53.

[4] Rec. Doc. 53, at 1.

2024, and October 10, 2024, that they were "working to secure dates from Jardini,"[5] Plaintiff's counsel unilaterally noticed Mr. Jardini's deposition for Friday, October 18, 2024.[6] Valley Forge's counsel informed Plaintiff's counsel that Mr. Jardini would not be available to be deposed on that date because Mr. Jardini was in Montana without a reliable internet connection, but that he was available on Monday, October 21, 2024, within the deadline set by this Court's Scheduling Order.[7] Plaintiff's counsel refused to confirm the October 21 date, however, contending that none of the four lawyers enrolled in this matter for Peiffer Wolf were available on October 21, 2024.[8] Plaintiff's counsel instead threatened, "if Mr. Jardini does not appear [on October 18] we'll move to have him excluded on that basis."[9]

In light of this threat, Valley Forge prepared a motion to quash Plaintiff's unilateral notice of deposition as inappropriate, unprofessional, and leading to unnecessary costs and expenses. Before filing the motion, however, Valley Forge's counsel reached out to Plaintiff's counsel one last time regarding these scheduling issues. Plaintiff's counsel yielded and agreed to proceed with the depositions of both rate experts two days beyond the deadline, on October 24, 2024.[10] The depositions of both rate experts occurred on that date, and Plaintiff was obviously able to timely prepare its *Daubert* motion. Valley Forge is disheartened to see further time and resources wasted by Plaintiff's counsel's backtracking on this scheduling issue.

---

[5]  E-mail from Clark McMillan to Dan Centner (Oct. 7, 2024), attached as Exhibit 2, pp. 6-7; *see also* Exhibit 2, p. 5, E-mail from Clark McMillan to Dan Centner (Oct. 10, 2024).

[6]  Jardini Deposition Notice, attached as Exhibit 4; *see also* Exhibit 2, p. 4–5, E-mail from Dan Centner to Clark McMillan (Oct. 14, 2024).

[7]  Exhibit 2, p. 2, E-mail from Clark McMillan to Dan Centner (Oct. 16, 2024).

[8]  Exhibit 2, p. 1, E-mail from Dan Centner to Clark McMillan (Oct. 16, 2024).

[9]  *Id.*

[10]  E-mail from Dan Centner to Katie Myers (Oct. 17, 2024), attached as Exhibit 3, p. 1.

PD.47318397.4

### B.     Law & Argument

Plaintiff's request that the Court altogether exclude Valley Forge's vital rate expert from testifying at trial due to the foregoing scheduling chronology is unfounded. Courts both inside and outside this District rightly disapprove of unilateral deposition notices, especially when multiple attorneys are enrolled, the witness is unavailable on the date of notice but available on another date, and plaintiff's counsel refused to adapt after being made aware of the scheduling conflict. *See, e.g.*, *B.K. by & through K.K. v. St. Catherine of Siena Sch.*, No. 21-1339, 2022 WL 3027838, at *4 (E.D. La. Aug. 1, 2022); *Sullivan v. Siemens Generation Servs. Co.*, No. 21-479, 2022 WL 2761136, at *2 (M.D. La. July 14, 2022). This Court in *St. Catherine of Siena* noted of particular concern that plaintiff's counsel refused to explore alternative and mutually convenient dates after being "informed of a scheduling conflict." 2022 WL 3027838, at *4. The Southern District of Florida has similarly cautioned: "The unilateral setting of depositions (especially coupled with an unwillingness by counsel to reschedule the deposition date) leads to the filing of unnecessary motions, as demonstrated in this case. Such motions are a waste of the parties' time and money, as well as a waste of scar[c]e judicial resources." *Karakis v. Foreva Jens Inc.*, No. 08-61470, 2009 WL 113456, at *6 (S.D. Fla. Jan. 19, 2009); *see also Chavez v. Arancedo*, No. 17-20003, 2017 WL 3025841, at *4 (S.D. Fla. July 17, 2017).

Plaintiff's unilateral deposition notice for Mr. Jardini was improper, and Plaintiff's counsel's initial refusal to cooperate regarding the scheduling of Mr. Jardini's deposition was unnecessarily contentious. Plaintiff's counsel has now followed through on his threat to move to exclude Valley Forge's necessary expert witness simply because Mr. Jardini was unavailable on the date unilaterally selected by Plaintiff's counsel, October 18, 2024.[11]

---

[11]  Apparently not willing to take undersigned counsel's word, Plaintiff's counsel inserted two random questions during Mr. Jardini's deposition to see if he had in fact been out of town on the day that counsel

PD.47318397.4

More importantly, there was no violation of this Court's Scheduling Order because Mr. Jardini was available the very next business day, October 21, 2024, which was *within* the expert deposition deadline. Counsel for both parties agreed to depose Mr. Jardini beyond that deadline to accommodate Plaintiff's counsel's schedule.[12] Plaintiff cannot now punish Valley Forge for attempting to work with Plaintiff's counsel simply because he "did not appreciate" Mr. Jardini's availability, and so he "unilaterally scheduled [Mr. Jardini's] deposition for a date that [Mr. Jardini] would obviously not appear." *Chavez*, 2017 WL 3025841, at *4. Plaintiff's counsel's failure to compromise on the scheduling issue has "resulted in waste of the parties' time and the Court's judicial resources." *Id.*

The case cited by Plaintiff actually supports Valley Forge's position. *See Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971). The plaintiff in that case sought to exclude a witness because the defendant did not stringently adhere to the court's pretrial order requiring witness lists to be filed by a certain date. The defendant supplemented the witness list the day after the deadline and submitted the added witness's report. *Id.* The Fifth Circuit held the trial court did not err by permitting the witness to testify because "pretrial procedures" under Federal Rule of Civil Procedure 16 can achieve their "purpose of improving the quality of justice only if the pretrial requirements entered at the discretion of the trial court are applied with intelligent flexibility, taking into full consideration the exigencies of each situation." *Id.* The Court noted that excluding the witness from testifying based on "rigid application of the pretrial requirements set at the

---

had unilaterally selected for the deposition. Mr. Jardini confirmed under oath that he was in Montana on October 18 as represented to Plaintiff's counsel. Exhibit 1, Deposition of André Jardini, p. 46:18–22 ("Q. Were you on the road last week? A. Last week? No. I was in Montana over the weekend. Q. When did you get to Montana? A. Thursday [Oct. 17]. Came back Sunday [Oct. 20].").

[12] Exhibit 2, pp. 2–3, E-mail from Clark McMillan to Dan Centner (Oct. 16, 2024) (agreeing to depose two other experts beyond the Court's deadline); Exhibit 3, p. 1, E-mail from Dan Centner to Katie Myers (Oct. 17, 2024).

PD.47318397.4

discretion of the trial judge would thwart the obvious intent of the rules to leave this kind of determination to the sole discretion of the trial judge." *Id.*

Plaintiff advocates for the exact inflexibility and rigidity rejected by *Davis*, which is particularly inappropriate here because Valley Forge offered to make Mr. Jardini available for deposition within this Court's deadline. Valley Forge worked with Plaintiff to accommodate Plaintiff's own experts' limited availability.[13] Ultimately, Valley Forge agreed to depose Plaintiff's rate expert, Mr. Pearl, beyond the expert witness deadline, likewise agreeing that Plaintiff could depose Valley Forge's bad-faith expert, Victoria Roberts, beyond that deadline as well, in an effort to resolve the scheduling issues.[14] Valley Forge only asked that Plaintiff similarly work with it to accommodate its rate expert's availability within the proposed time frame. Plaintiff was not prejudiced by any of this cooperation because its counsel deposed Mr. Jardini and had sufficient time to prepare its motion to exclude.

Parties need to be flexible when coordinating depositions for busy expert witnesses, and scheduling compromises are a normal part of any sophisticated litigation. Such an extreme repercussion as excluding Valley Forge's rate expert in a rate dispute based on a simple scheduling conflict would be highly prejudicial and inappropriate under these circumstances.

## II.     MR. JARDINI SHOULD NOT BE EXCLUDED UNDER RULE 702

### A.     Background

On September 6, 2024, Plaintiff disclosed the expert report of Richard M. Pearl.[15] Mr. Pearl seeks to offer expert opinion testimony regarding the reasonableness of rates paid by Peiffer Wolf

---

[13] Exhibit 2, p. 3, E-mail from Clark McMillan to Dan Centner (Oct. 16, 2024).

[14] *Id.*

[15] Report of Richard M. Pearl, attached as Exhibit 5.

PD.47318397.4

to California-based law firms Altshuler Berzon LLP ("Altshuler") and Shartsis Friese, LLP ("Shartsis"). Mr. Pearl's ultimate opinion is that the rates were reasonable because "the hourly rates paid by [Peiffer Wolf] to the law firms in the matter brought by Levin Simes are well within the range of non-contingent rates charged by comparably qualified San Francisco Bay Area attorneys for reasonably similar work. Those rates a[re] therefore reasonable."[16] Valley Forge has *not* moved to exclude Mr. Pearl's expert testimony, recognizing that it is the role of the jury to weigh the credibility of "the bases and sources of an expert's opinion." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

In response to Mr. Pearl's report, Valley Forge designated its own rate expert, André E. Jardini, and provided Plaintiff with his expert report on September 30, 2024.[17] As set forth in his report, Mr. Jardini has over 47 years of experience practicing as a litigation attorney in California. He also serves as an arbitrator in the Los Angeles County Bar Association Dispute Resolutions Services Program, which concerns attorney-client disputes over legal billings. Mr. Jardini earned his Bachelor of Arts at the University of Notre Dame in 1973.[18] He then graduated from University of California College of the Law, San Francisco (formerly Hastings College of the Law) with a Juris Doctorate in 1976 and was admitted to the Bar of the State of California that same year. He is also admitted to practice before the U.S. District Courts for the Southern, Central, Northern, and Eastern Districts of California. Finally, he is admitted to practice and often appears before the United States Court of Appeals for the Ninth Circuit.

---

[16] *Id.*, ¶ 38.

[17] Report of André E. Jardini, attached as Exhibit 6.

[18] For Mr. Jardini's academic credentials, see *id.*, ¶ 5.

PD.47318397.4

After graduating law school, Mr. Jardini clerked for Judge Robert Firth of the U.S. District Court for the Central District of California.[19] He has worked at Knapp, Petersen & Clarke since 1981. Mr. Jardini's practice consists predominantly of trial work, having tried 55 jury trials to conclusion. He is a member of the American Board of Trial Advocates ("ABOTA"), from which he achieved "Advocate" status based on completing more than 50 jury trials. His trials have covered a variety of subject areas, including employment litigation, complex litigation, class action matters, real estate matters, product liability litigation, intellectual property litigation, business litigation, contract disputes, environmental litigation, insurance coverage and bad faith cases, and business torts.

Mr. Jardini has gained familiarity with the time and effort required to effectively litigate breach of contract and breach of fiduciary duty cases such as the underlying matter here brought by Levin Simes against Peiffer Wolf.[20] He has participated, both as counsel and as an expert witness, in arbitrations and hearings in numerous courts of general jurisdiction concerning attorneys' fee disputes. Over the past 31 years, he has personally audited attorney fee submissions, as well as given testimony, in numerous employment matters involving prevailing party fee requests, complex litigation cases including large business disputes, significant intellectual property cases, large environmental matters, bankruptcy and construction defect cases, and many others. To date, he has performed more than 1,950 such legal fee audits, with reviewed billings in excess of $2.5 billion. He has testified as an expert witness, through declaration or live testimony, in more than 585 cases regarding reasonableness of legal fees, both on behalf of the proponent of such fees and on behalf of the opposing party.

---

[19]  For Mr. Jardini's work experience, see Exhibit 6, Report of André E. Jardini, ¶¶ 6–7, 9.

[20]  For Mr. Jardini's legal fee dispute experience, see *id.*, ¶¶ 8, 10–20.

PD.47318397.4

Given Mr. Jardini's extensive experience trying and arbitrating cases in which the predominant issue was the reasonableness of attorneys' fees and costs, he founded and serves as President for KPC Legal Audit Services, Inc., which specializes in the review and audit of legal billings and consulting and education on legal cost containment. KPC Legal Audit is a member of the National Association of Legal Fee Analysis ("NALFA"), and Mr. Jardini often speaks on attorneys' fee topics at NALFA seminars and MCLE events. He also regularly speaks on attorneys' fees issues in classes at both USC School of Law and UCLA School of Law.

Contrary to Mr. Pearl's opinion, Mr. Jardini's fundamental opinion is that "[t]he fees invoiced by Altschuler and Shartsis for defense in the *Peiffer* matter are excessive and unreasonable."[21]

## B. Law & Argument

Mr. Jardini's expert testimony is admissible under Federal Rule of Evidence 702. Expert testimony is admissible where the expert's "specialized knowledge" will assist the trier of fact, is based on sufficient facts or data, and is the product of reliable methods applied to the facts. FED. R. EVID. 702. Expert testimony is helpful to the trier of fact if: (1) the expert's testimony is within his qualifications; (2) the methodology employed is based on a reliable and practical application of the expert's professional analytical tools; and (3) the expert's testimony is relevant to a fact at issue. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153–54 (1999).

In many instances, an expert's opinion is based on scientific methodology or research, not on the expert's personal experiences. *See generally Daubert*, 509 U.S. 579. However, an expert's opinion is also admissible where the opinion is formed from "a set of observations based on

---

[21] Exhibit 6, Report of André E. Jardini, ¶ 82.

PD.47318397.4

extensive and specialized experience." *Kumho Tire*, 526 U.S. at 156. In *Kumho Tire*, the Supreme Court acknowledged that while the general gatekeeper principles of *Daubert* apply to non-technical experts, courts must be "flexible" when evaluating "other specialized knowledge." *Id.* at 141, 149. Accordingly, the *Kumho Tire* Court stressed that district judges have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

The Court, in its role as gatekeeper, is "not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore Cnty.*, 80 F.3d 1074, 1078 (5th Cir. 1996). As the Supreme Court explained in *Daubert*, wholesale exclusion of expert testimony is disfavored, and the better approach is to permit the expert testimony and allow "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." 509 U.S. at 596. Ultimately, when evaluating "non-scientific" testimony, courts must merely be satisfied that the witness "connect[s] the experience to the conclusion offered" and "explain[s] why the experience is a sufficient basis for the opinion." *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1048–49 (N.D. Tex. 2022) (quoting FED. R. EVID. 702 Advisory Committee Note).

Here, contrary to Plaintiff's argument, Mr. Jardini is undeniably qualified to opine as a Rule 702 expert based on the *Daubert* and *Kumho Tire* standards, and his expert opinions will assist the trier of fact when pitted against Mr. Pearl's expert testimony on the same rate issues. The jury should be the one to weigh these dueling expert testimonies at trial. In addition to his academic and professional credentials, Mr. Jardini has over 39 years of experience in litigation and audits surrounding California legal fee disputes in a variety of roles such as:

- participating as counsel and as an expert witness in arbitrations and court hearings concerning attorney fee disputes;

- litigating over 50 jury trials in a variety of different subject areas;

- auditing attorney fee submissions;

- testifying as to the prevailing party attorney fee requests in complex litigation cases;

- testifying on both sides of litigation as an expert witness, through declaration or live testimony, in more than 585 cases regarding reasonableness of legal fees;

- teaching seminars and law school classes on legal fees.[22]

To be blunt, there are probably few other witnesses on the planet who are more qualified to testify on the issue of rates in this case than Mr. Jardini. *See Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623 (5th Cir. 2018) (affirming the district court's determination that a witness could testify as an expert on warnings based on his education and lengthy career as a mechanical engineer); *see also Am. Can!*, 597 F. Supp. 3d at 1050 (holding that a lawyer could provide expert testimony as to the reasonableness of fees and expenses incurred in suit because of his 30 years of experience in insurance law).

Plaintiff attacks the method and factual basis by which Mr. Jardini formed his expert opinions. In particular, Plaintiff challenges the quartile of the Real Rate Report in which Mr. Jardini placed the underlying litigation, the value Mr. Jardini placed on Altshuler and Shartsis's credentials and trial experience, and the classification and severity of the underlying litigation. But while Plaintiff and its expert, Mr. Pearl, can dispute Mr. Jardini's categorization of those elements, there cannot be any genuine dispute that Mr. Jardini's categorization is more than adequate to support his opinion testimony based on his specialized experience in California legal rate disputes and the facts of this case. *Kumho Tire*, 526 U.S. at 156.

Plaintiff also asks that Mr. Jardini's testimony be limited, precluding him from testifying as to excessive time entries paid by Peiffer Wolf to Altshuler and Shartsis. To the contrary,

---

[22] Exhibit 6, Report of André E. Jardini, ¶¶ 5–20.

-11-

PD.47318397.4

Mr. Jardini has vast experience auditing, reviewing reasonableness of time entries and legal fees, and litigating as counsel in complex litigations like this one.[23] Based on his own auditing and litigation experience, Mr. Jardini can opine on excessive staffing, overall litigation costs, and counterclaim work based on his review of underlying invoices. Again, Plaintiff may disagree with Mr. Jardini's opinions, but Rule 702 does not require the exclusion or limitation of Mr. Jardini's testimony. Plaintiff's critique of the "bases and sources" of Mr. Jardini's expert opinions is something it can pursue on cross-examination; it is not a basis to exclude Mr. Jardini's opinions. *See Viterbo*, 826 F.2d at 422 ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."); *Slaughter v. S. Talc Co.*, 919 F.2d 304, 306 (5th Cir. 1990) (questions regarding the bases of an expert's opinion go to weight rather than admissibility); *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 580 (5th Cir. 1985) (attacks on an expert's credibility are within the province of the jury); *In re M&M Wireline & Offshore Servs., LLC*, No. 15-5338, 2017 WL 480603, at \*5–6 (E.D. La. Feb. 3, 2017) (finding an objection that the expert report was based on "unfounded and unsubstantiated opinions" and lack of factual support or specialized knowledge is "precisely" the type of challenge best addressed through vigorous cross-examination).

In this rate dispute, Mr. Jardini formed his opinions as to the excessiveness and reasonableness of legal fees that Peiffer Wolf paid to Altshuler and Shartsis based on his 39 years of experience in and specialized knowledge of California attorneys' fees disputes. In his report, he articulated the factual basis for his opinion on each issue, including the factual and methodological reasons for disagreeing with Plaintiff's paid rates. At his deposition, Mr. Jardini

---

[23] Exhibit 6, Report of André E. Jardini, ¶¶ 8, 10–13, 16–17, 19–20.

PD.47318397.4

testified as to what he thought the methodology should be to determine a reasonable rate.[24] Plaintiff may dispute his bases and method, but those are arguments for the jury, not a *Daubert* motion. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (holding that questions relating to the bases and sources of an expert's opinion generally go to the weight of the opinion rather than its admissibility because it is "the role of the adversarial system, not the court, to highlight weak evidence"); *see also Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012) (noting an expert's opinion will be excluded on this ground only when, for example, it is "*completely* unsupported," and "the opposing party must expose that lack of reliability" (emphasis added)); *Am. Can!*, 597 F. Supp. 3d at 1049 ("It is the purview of the fact-finder to decide the accuracy of facts underlying an opinion."). Indeed, by attempting to strike Valley Forge's expert while also designating its own expert witness to testify on the same matters, Plaintiff "appear[s] to want to have [its] cake and eat it too." *Beneplace, Inc. v. Pitney Bowes, Inc*., No. 15-65, 2016 WL 11582931, at *4 (W.D. Tex. Sept. 20, 2016).

## III. CONCLUSION

Based on the foregoing, Valley Forge respectfully requests that the Court deny Plaintiff's motion to exclude or limit Mr. Jardini's expert testimony at trial. Valley Forge should be permitted to put forth its eminently qualified and relevant rate expert to refute the expert testimony offered by Plaintiff's rate expert, and all challenges should be reserved for vigorous cross-examination at trial.

---

[24] Exhibit 1, Deposition of André Jardini, pp. 9–15, 189–90.

PD.47318397.4

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: _/s/ Katie W. Myers_
Katie W. Myers (Bar No. 32771)
Jeremy T. Grabill (Bar No. 34924)
J. Clark McMillan (Bar No. 35907)
Patrick M. Judd (Bar No. 40415)
Canal Place | 365 Canal Street, Ste. 2000
New Orleans, Louisiana 70130-6534
Telephone: 504-566-1311
Facsimile: 504-568-9130
E-Mail: katie.myers@phelps.com
jeremy.grabill@phelps.com
clark.mcmillan@phelps.com
patrick.judd@phelps.com

**ATTORNEYS FOR DEFENDANT, VALLEY FORGE INSURANCE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of November, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service.

_/s/ Katie W. Myers_
Katie W. Myers

-14-