<u>EXPERT REPORT OF ANDRÉ E. JARDINI</u>

1. I am an attorney duly licensed to practice law in the state of California and a member and President of the firm Knapp, Petersen & Clarke. I have been asked to present my expert opinion by way of an expert report pursuant to Rule 26 (a)(2)(B) for Valley Forge Insurance Company (Valley Forge) regarding certain attorneys' fees requested in the matter known as *Peiffer Wolfe Carr Kane Conway & Wise, LLP v. Valley Forge Insurance Company* pending in the United States District Court, Eastern District of Louisiana, Case No. 23-6035.

2. The subject fees are for work performed by Altshuler Berzon, LLP. ("Altshuler"), and Shartsis Friese, LLP ("Shartsis"). These fees have been submitted for payment to Valley Forge. The fees requested include time billed during the period May 2023 to August 2024 (Altschuler) and June 2023 through August 2024 (Shartsis). They were incurred in defending a matter filed in San Fransisco Superior Court by Levin Simes LLP ("Levin") against two of their former attorneys, Rachel Abrams and Brian Perkins, and the law firm they joined upon leaving Levin, Peiffer Wolfe Carr Kane Conway & Wise, ("Peiffer") which was filed in San Francisco Superior Court, and bears case number SFSC Case No CG236066324.

3. I believe that significant issues exist concerning the reasonableness of the defense fees incurred by both firms. In my opinion, the requested hours and rates are excessive given the nature of the litigation and the law firms involved. Staffing is top heavy and excessive. Not all the services appear compensable, including work on a cross complaint. Other billing issues also were identified in the invoices.

4. Although invoices were presented, given the amounts billed, I do not believe that a full payment could be made. The high hourly rates as well as excessive hours and fees, make the invoices questionable and amounts owing uncertain without further review.

**QUALIFICATIONS**

5. I have practiced law, principally as a litigation attorney, in California, for 47 years. I have a Bachelor of Arts Degree from the University of Notre Dame, granted in

KNAPP, PETERSEN & CLARKE

6818190.1 03014/01761

Exhibit 6

1973. I graduated from University of California College of the Law, San Francisco (formerly Hastings College of the Law) with a Juris Doctorate in 1976 and was admitted to the Bar of the State of California that same year. I also have been admitted to practice before the United States District Court for the Southern District of California, as well as in the Central District, Northern District and Eastern District. I am admitted to practice and have often appeared before the Ninth Circuit Court of Appeals.

6. I served as a law clerk to the Honorable Robert Firth of the United States District Court, Central District of California, in 1977 and 1978.

7. From time to time, I serve as an arbitrator in the Los Angeles County Bar Association Dispute Resolutions Services Program, which concerns attorney-client disputes over legal billings.

8. I have participated, both as counsel and as an expert witness, in arbitrations and hearings in numerous courts of general jurisdiction concerning attorney fee disputes.

9. I have been employed at Knapp, Petersen & Clarke since its inception as a law firm in 1981. My practice consists predominantly of trial work. I have tried 55 jury trials to conclusion during my tenure with the firm. I am a member of the American Board of Trial Advocates ("ABOTA"), having achieved "Advocate" status with ABOTA based on the completion of more than 50 jury trials. (Attached hereto as **Exhibit 1** is a listing of some of my trial experience.) These trials cover a wide variety of subject areas, including employment litigation, both on behalf of plaintiffs and defendants, complex litigation, class action matters on behalf of both plaintiffs and defendants, real estate matters, product liability litigation, intellectual property litigation, business litigation, contract disputes, environmental litigation, insurance coverage and bad faith cases, business torts, and other areas.

10. I am familiar with the time and effort required to effectively litigate breach of contract and breach of fiduciary duty cases such as this.

11. Over the past 31 years I have personally audited attorney fee submissions, as well as given testimony, in numerous employment matters involving prevailing party fee

KNAPP,
PETERSEN
& CLARKE

-2-

requests, complex litigation cases including large business disputes, significant intellectual property cases, large environmental matters, bankruptcy and construction defect cases, and many others. Attached hereto as **Exhibit 2** is a listing of my most recent experiences testifying as to attorneys' fees issues in such matters.

12. Since 1985, I have been retained by clients and actively engaged in the auditing of legal billings and consulting with companies to control legal expenditures. As a consultant or expert witness, I have personally audited the billings of a large proportion of the major law firms in California, as well as billings of numerous out-of-state firms. To date, I have performed more than 1950 such legal fee audits, with billing reviewed in excess of $2.5 billion.

13. I have tried and arbitrated numerous cases in which the predominant issue involved is the reasonableness of attorneys' fees and costs.

14. Attached as **Exhibit 3** is an outline of my qualifications to testify as an expert witness concerning reasonableness of fee issues.

15. Based on my significant experience relating to legal audit matters and our firm's belief that there was a need for such a service in the legal community, in October of 1991, Knapp, Petersen & Clarke established KPC Legal Audit Services, Inc. I am the founder and the President of that company.

16. KPC Legal Audit Services, Inc. is a dba of Knapp, Petersen & Clarke. The company specializes in the review and audit of legal billings and consulting and education on legal cost containment.

17. KPC Legal Audit has been a member of NALFA, the National Association of Legal Fee Analysis, since its inception. I have often been a speaker on attorney fee topics at NALFA seminars and other MCLE events. NALFA has included me in their list of "The Nation's Top Fee Experts" since that listing was created. Attached as **Exhibit 4** is the NALFA Fact Sheet which sets forth their Best Practices in Legal Fee Analysis.

18. I have spoken on attorneys' fee issues in classes at both USC School of Law and UCLA School of Law.

KNAPP, PETERSEN & CLARKE

19. KPC Legal Audit has reviewed billing relating to a wide variety of different types of litigation including numerous California employment cases, including discrimination and harassment claims, sophisticated business dispute litigation, product liability litigation, intellectual property litigation including patent, trademark and trade secret cases, civil rights claims, other commercial law matters, transactional matters, public interest cases, environmental litigation, family law and bankruptcy matters. These cases include complex litigation involving attorney fee issues in California and throughout the U.S.

20. I have testified as an expert witness, through declaration or live testimony, in more than 585 cases regarding reasonableness of legal fees, both on behalf of the proponent of such fees and on behalf of the opposing party.

**STANDARD OF REVIEW**

21. I am guided by Rule 1.5 of the State Bar of California Rules of Professional Conduct, as this rule concerns California attorneys. The rule, as applied by court decisions, discusses factors to be considered in determining the reasonableness of attorneys' fees. The factors include:

(1) Whether the lawyer engaged in fraud or overreaching in negotiating or setting the fee;

(2) Whether the lawyer has failed to disclose material facts;

(3) The amount of the fee in proportion to the value of the services performed;

(4) The relative sophistication of the lawyer and the client;

(5) The novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly;

(6) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(7) The amount involved and the results obtained;

6818190.1 03014/01761

KNAPP,
PETERSEN
& CLARKE

(8) The time limitations imposed by the client or by the circumstances;

(9) The nature and length of the professional relationship with the client;

(10) The experience, reputation, and ability of the lawyer or lawyers performing the services;

(11) Whether the fee is fixed or contingent;

(12) The time and labor required; and

(13) Whether the client gave informed consent to the fee.

22. These standards are regularly applied by courts to determine the reasonableness of attorneys' fees. Similar standards exist in every jurisdiction, including Louisiana, whose law is applicable in this matter.

23. The United States Supreme Court opinion in *Hensley v. Eckerhart* (1983) 461 U.S. 424 [103 S.Ct. 1933] is instructive. The court, in discussing an award of attorneys' fees to a prevailing party, enumerated the factors which should be considered in making such an award. The starting point in the analysis is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." (*Id.* at 433.) The court stated hours that were not reasonably expended should be excluded from the calculation stating:

> Cases may be overstaffed and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fees submission.

(*Id.* at 434.)

24. In the course of my audit work, I have utilized a number of sources to support my conclusions, including California case law on the topic of reasonable attorneys' fees, State Bar of California Advisory 2016-02 entitled "Analysis of Potential Bill Padding and Other Billing Issues," and other such advisories, those principles frequently discussed in

-5-

KNAPP, PETERSEN & CLARKE

presentations, including by notable jurists and NALFA, and other secondary sources on legal fee issues.

25. The standard of reasonableness which will be applied in this matter is based on these principles, on my experience in litigation, and my experience in the legal audit practice. I have analyzed the amount sought in fees using my experience and the above standards.

**MATERIALS REVIEWED**

26. I have reviewed the billing records submitted by Altschuler and Shartsis. I have also reviewed certain materials provided by Valley Forge including:

- July 28, 2023 Letter from Valley Forge to Peiffer Wolfe on rates;
- October 12, 2023 Letter from VF to PW on rates;
- Rate charts for AIPI claims in California.

27. I have also reviewed the interrogatory response from Valley Forge on its method for determining rates, which has additional information. I have also reviewed the four page Register of Actions for the underlying matter in San Fransisco Superior Court.

**SUBJECT ACTION**

28. This matter stems from an action filed in San Francisco Superior Court by Levin in May of 2023 alleging breach of fiduciary duty, interference with contractual obligations, and other related causes. The alleged acts that were the basis of the complaint involved two attorneys, one a former partner at Levin, Rachel Abrams, and the other a former of counsel at Levin, Brian Perkins. Both of these attorneys left Levin, and began working for defendant firm, Peiffer. The matter was litigated in San Francisco Superior Court, then moved to JAMS for arbitration. A 10 day arbitration took place in July of 2024.

29. Abrams and Perkins retained Shartsis to defend them in the litigation. Pieffer retained Altschuler. Billing from both Altshuler and Shartsis has been submitted to Valley Forge for reimbursement. The insurer has agreed to defend this action and provide reimbursement subject to a reservation of rights and has referenced certain language within the policy of insurance that identify certain fees incurred by the defense law firms that are

KNAPP,
PETERSEN
& CLARKE

6818190.1  03014/01761

not covered under the policy. The insurer and insured have not resolved these issues, and as a result of these issues, including reimbursable rates, this coverage action was filed in the U.S. District Court in the Eastern District of Louisiana.

**SCHEDULES PREPARED**

30. Attached as **Exhibit 5** are schedules prepared concerning the billing presented by Altshuler and Shartsis in this matter. They include:

**Total Fees and Costs Billed – All Firms**

**Altshuler Berzon, LLP**

- Fees Billed
- Index of Billing Personnel
- Rate Adjustment
- Costs Billed

**Shartsis Friese, LLP**

- Fees Billed
- Index of Billing Personnel
- Rate Adjustment
- Costs Billed

31. Altshuler is seeking $3,992,687.50 in attorneys' fees, and $230,560.76 in costs, for a total of $4,223,248.26. Shartsis fees total $2,566,232.50, with accompanying costs of $114,159.24, for a total of $2,680,391.74. The combined total of all attorney fees and costs from the two firms is $6,558,920 in fees and $344,720 in costs, for a total of $6,903,640. These amounts are reflected in the attached **Fees and Costs Billed**.

32. As a result of reviewing the forgoing material, I have developed opinions concerning the issue of reasonableness of the fees billed by defense counsel in this action, based on the invoices submitted to date. I understand that the action is still pending and there will be additional invoices submitted. I have not been asked to address the reasonableness of the costs incurred.

////

KNAPP,
PETERSEN
& CLARKE

-7-

## ATTORNEY RATES AND STAFFING CHOICES

33. Defense counsel is seeking attorney rates that are excessive, especially given the nature of the services and the level of experience of the attorneys. Further, their top heavy staffing means that much of the work was performed by high rate attorneys at the exclusion of more appropriate staffing.

34. Altshuler utilized the services of 19 timekeepers in a matter that lasted just fifteen months. They billed a total of 5,281.00 hours. This includes three partners, each of whom billed between $1,000 and $1,325 per hour. The average rate for the partners who billed over 30% of the time was **$1,263.38**. The firm used five associate attorneys, and those rates were also excessive, $625-$750, especially given the level of experience; two to seven years. Eleven other billing personnel were billed at a very high rates, $325-$350. Their time accounted for 25% of the total.

35. The overall average rate at Altshuler for all time spent is an astronomical **$756.05** per hour, inclusive of attorneys and non-attorneys alike, see **Index of Billing Personnel.** While it is likely true that certain attorneys at Altschuler may merit premium rates for services performed in the appropriate matter, the rates sought for this matter, combined with the high rates across all levels of timekeepers, and the overstaffing of this matter have caused the overall fees to be excessive.

36. These same staffing and rate issues apply to Shartsis. That firm used 16 timekeepers who billed 3,718.70 hours in fifteen months. Shartsis personnel included four partners and two "counsel," whose time accounted for over 67% of the total. Partner rates ranged from $735 to $1,100. They also used three associate attorneys, who are also recent admittees, and seven other billing personnel. The average firm rate at Shartsis is $690.09, reflecting their top heavy staffing approach and unreasonably high rates. The high rates across the board have unreasonably increased the cost of the case.

37. The high rates which are claimed are in excess of reasonable rates for attorneys in this community in similar litigation.

////

-8-

6818190.1  03014/01761

38. Both Altschuler and Shartsis failed to effectively utilize lower cost personnel. To the extent that the two firms did include non-attorneys, much of that time was spent doing ministerial work. Such as "load documents" into a document review database for review by attorneys, or "edit transcription of voice mail messages" (Shartsis), and "organize documents into SharePoint," "create password-protected folder" (Altshuler). Altshuler did utilize some paralegal time for document review, however this was in addition to review by both associates and partners. The failure to more effectively use non-attorney personnel in this actively litigated case, inclusive of discovery and document review contributed to the increased fees.

39. More appropriate staffing choices, using non-attorney and lower cost attorneys to perform the myriad services involved in this case which fit their professional credentials, especially with respect to Shartsis, would have significantly lowered the overall cost of the litigation. Given the significant document review included in this matter it would be typical for qualified paralegals to perform most of that activity, rather than to prepare the documents for attorney review, as was often the case.

40. The rates claimed in excess of reasonable rates in the community for this litigation have significantly and unreasonably increased the total amount of fees claimed.

**THE 2023 REAL RATE REPORT IS AN APPROPRIATE SURVEY OF RELEVANT RATES**

41. ELM Solutions, a Division of Wolters Kluwer, publishes annually its Real Rate Report. I have considered the 2023 Real Rate Report concerning applicable rates in a case such as this in this community.

42. The Real Rate Report is one of the few available surveys that considers multiple defining criteria relevant to rates, including importantly, the location in which the case is venued. The report identifies rates by location, experience, firm size, areas of expertise, industry, and timekeeper role (i.e., partner, associate, and paralegal).

43. The report is a survey of such rates. As such, it differs markedly from anecdotal recitations of attorney rates selected by parties to substantiate claimed to be

KNAPP,
PETERSEN
& CLARKE

reasonable rates. Such a process was used here by Pfeiffer's expert. Selected rates from dissimilar law firms, from unrelated cases, from uninvolved attorneys and the like are, in my opinion, not as probative as a survey which meaningfully reviews all rates against recognized variables.

44. The Real Rate Report indicates the following key factors that drive rates:

- Type of Litigation, in this case - Insurance Defense
- Years of Experience of the attorneys
- Overhead (the cost associated with the firm's support network and other expenses)
- Firm size

(See **Exhibit 6**, Real Rate Report 2023, "Report Use Considerations," page 5.

45. The Real Rate Report has been commonly relied upon by courts as evidence of what is the customary rate charged in the forum. This is true nationwide. A Westlaw search of District Court cases in the 9th Circuit which have cited to the Real Rate Report numbers 285 cases.

46. The report is frequently used by parties and considered by courts in determining local rates. The court's comment in *Pritchett v. Slauson Gas Station, LLC*, 2022WL 319989, at *2 (C.D. Cal. Jan. 10, 2022) is indicative. There the court stated "[T]his Court and others regularly consult the Real Rate Report. . . when awarding attorneys' fees because it is based on actual legal billing, matter information, and paid and processed invoices from a wide range of companies."

47. My analysis herein will examine these factors in connection with the reported survey information in the 2023 Real Rate Report, the pertinent pages of which I have included as **Exhibit 7**.

**RATES CHARGED BY LARGE DOWNTOWN SAN FRANSICSO LAW FIRMS ARE NOT PROBATIVE**

48. The fees sought are comparable to high rates charged by large downtown San Francisco law firms as identified by Richard Pearl.

-10-

KNAPP, PETERSEN & CLARKE

49. The foregoing rates are not probative in this matter, in my opinion. Rates at large national (or downtown San Francisco) firms are charged to Fortune 500-type clients in very often extraordinarily complex and important litigation.

50. Such cases include major patent infringement litigation, and other intellectual property litigation, finance and securities litigation, and the like. I have conducted legal audits of such firms in such cases. The magnitude of those matters is far different than is involved here. In one such patent infringement case in which I testified at trial in San Jose, 10,000,000 documents were involved.

51. The costs associated with such major firms are far in excess of those involved here.

52. The firm size in such cases is often more than 1,000 lawyers. Here, far fewer are involved in these two defense counsel firms.

53. The billing process with clients in large complicated hourly matters at such firms differs significantly from the billing records in a case such as here involved. The process of billing in complex cases at such large firms impacts the rates actually achieved.

54. Thomas Reuters in 2023 reported these rate issues. That report is attached hereto as **Exhibit 8.** The report describes the following types of rates applicable at law firms:

    a. Standard Rates - the headline rates law firms advertised similarly to the rack rate at a hotel.

    b. Work Rates – the rates clients agree to pay to engage a law firm on a new matter, typically reflecting a discount off the standard rate.

    c. Billed Rates – the rates clients are actually billed by their law firm, after prebill adjustments by the law firm called "write downs."

    d. Collected Rates – the rates clients actually end up paying after reviewing the invoice and making adjustments of their own, commonly called "write offs."

55. Of particular interest is the concept of "realization," which is the percentage of the work rate that is converted to a collected rate. At the end of the process, reductions

KNAPP, PETERSEN & CLARKE

-11-

by clients have resulted, based on the Thomas Reuters survey, in a realization of less than 90% of the amount billed. (See **Exhibit 8, Figure 5.**)

56. Here, the law firms seek recovery for virtually every hour billed, with only a few write off's at inapplicable rates or, in the case of Altschuler, a few courtesy percentage reductions to certain invoices which are realized in a widely divergent process of billing and payment.

57. Based on the foregoing, large firm rates in unrelated litigation are not helpful. Also, the rates themselves, as commonly reported, are an overstatement of rates actually paid.

58. Anecdotal information as to high firm rates and ill-fitting survey information are not helpful in determining appropriate rates in this case. Here, we are dealing with much smaller firms, in a very different kind of case under economic circumstances which differ profoundly from those involved in large firm rate settings.

## THE REAL RATE REPORT SUPPORTS RATE REDUCTIONS

59. As described above, the Real Rate Report is a valuable resource commonly used by courts to set appropriate legal rates factoring in the type of matter and years of experience.

60. As a general matter, on an overall basis, the Real Rate Report data exemplifies that smaller firms typically charge lesser rates. This is most likely the result of lower overhead costs. Both Altshuler and Shartsis would be seen in this data as a smaller firms. As to the rates applicable depending on firm size in Insurance Defense litigation matters, the Real Rate Report data is as follows:

| Size of Firm | First Quartile | Median Quartile | Third Quartile |
|---|---|---|---|
| < than 50 - Partner | $170 | $185 | $ 220 |
| Associate | $150 | $165 | $ 190 |
| > 1,000 - Partner | $660 | $1,050 | $1,306 |
| Associate | $495 | $725 | $ 963 |

KNAPP,
PETERSEN
& CLARKE

-12-

61. The Real Rate Report reports overall litigation rates in San Francisco as follows:

| Position | First Quartile | Median Quartile | Third Quartile |
|---|---|---|---|
| Partners | $436 | $750 | $1,124 |
| Associate | $341 | $450 | $ 718 |

62. The foregoing numbers include matters of all types and complexity. Insurance Defense cases have lower rates.

63. The Real Rate Report reports San Francisco rates by years of experience.

| Position | First Quartile | Median Quartile | Third Quartile |
|---|---|---|---|
| < than 3 years | $440 | $570 | $670 |
| 3 to 7 years | $592 | $761 | $875 |
| > 7 years | $464 | $674 | $888 |

64. The foregoing rates concern all litigated cases regardless of type or complexity. Insurance Defense cases have lower rates. The foregoing numbers also include firms of all sizes. Small firms' rates are lower.

65. The Real Rate Report also describes San Francisco rates for Insurance Defense litigation:

| Position | First Quartile | Median Quartile | Third Quartile |
|---|---|---|---|
| Partner | $535 | $675 | $981 |
| Associate | $385 | $485 | $835 |

66. I have used the information in the Real Rate Report as a basis for my analysis. I do not believe that Third Quartile rates would be appropriate for this matter, given the number of parties and amounts at stake. I have utilized my own legal audit experience in evaluation of legal rates for over 30 years in California. I have also reviewed the correspondence from Valley Forge with rate information regarding the rates the applied to

-13-

KNAPP, PETERSEN & CLARKE

this matter, as well as the rates they routinely paid in comparable matters in the same community. I believe that the rates that Valley Forge assigned to this matter in their correspondence were reasonable and appropriate.

67. I have applied rates to each timekeeper which I have adjusted to take into consideration the fact that this matter included time in 2023 and 2024, which would typically have meant rate increases in the calendar year. I have included a schedule for both Altschuler and Shartsis which identifies the **Adjusted Rates** for each timekeeper. I believe that these rates are a fair and appropriate rate for each timekeeper, given their level of experience, the firm, and the nature of the litigation, as well as the venue.

68. Application of adjusted rates results in the following fees when applied against the hours billed, as set forth on the rate adjustment schedules:

| Timekeeper (Original/Adjusted Rate) | | Bar Admittance | Hours Billed | Original Fees Billed | Adjusted Fees |
|---|---|---|---|---|---|
| Altshuler Berzon, LLP | | | | | |
| **Partner** | | | | | |
| Finberg, James M. | ($1,275.00\$475.00) | 1984 CA | 1,111.70 | $1,461,207.50 | $528,057.50 |
| Leyton, Stacey | ($1,100.00\$450.00) | 1999 CA | 471.60 | $539,815.00 | $212,220.00 |
| Pitts, P. Casey | ($1,000.00\$400.00) | 2009 CA | 2.70 | $2,700.00 | $1,080.00 |
| **Associate** | | | | | |
| Baltzer, James | ($675.00\$300.00) | 2020 CA | 979.80 | $661,365.00 | $293,940.00 |
| Bass, Kate | ($625.00\$275.00) | 2022 CA | 0.50 | $312.50 | $137.50 |
| Lee, Harold | ($700.00\$325.00) | 2017 CA | 324.00 | $235,445.00 | $105,300.00 |
| Stender, Talia | ($625.00\$275.00) | 2021 CA | 1,032.20 | $645,125.00 | $283,855.00 |
| Tholin, Robin | ($675.00\$275.00) | 2022 CA | 0.70 | $472.50 | $192.50 |
| **Other Billing Personnel** | | | | | |
| Davidson, Brett | ($350.00\$175.00) | NA | 34.50 | $12,075.00 | $6,037.50 |
| Etter, Arthur | ($350.00\$175.00) | NA | 26.10 | $9,135.00 | $4,567.50 |
| Greenberg, Eliana | ($350.00\$175.00) | NA | 137.80 | $48,230.00 | $24,115.00 |

KNAPP, PETERSEN & CLARKE

-14-

| | | | | | |
|---|---|---|---|---|---|
| Kostman, N. | ($325.00\$175.00) | NA | 13.70 | $4,452.50 | $2,397.50 |
| Laus, A. | ($325.00\$175.00) | NA | 338.90 | $110,142.50 | $59,307.50 |
| Mandani, L. | ($325.00\$175.00) | NA | 3.40 | $1,105.00 | $595.00 |
| Nelson, L. | ($325.00\$175.00) | NA | 59.30 | $19,272.50 | $10,377.50 |
| Shively, C. | ($325.00\$175.00) | NA | 520.80 | $169,260.00 | $91,140.00 |
| Walls, M. | ($325.00\$175.00) | NA | 10.80 | $3,510.00 | $1,890.00 |
| **Shartsis Friese, LLP** | | | | | |
| **Partner** | | | | | |
| Cialone, Frank A. | ($875.00\$450.00) | 1994 CA | 832.80 | $741,720.00 | $374,760.00 |
| Ganjam, Sanjeet S. | ($735.00\$375.00) | 2012 CA | 652.70 | $489,433.50 | $244,762.50 |
| Mottahedeh, Rafi W. | ($1,100.00\$375.00) | 2014 CA | 1.80 | $1,980.00 | $675.00 |
| Ward, Robert C. | ($950.00\$450.00) | 1992 CA | 11.50 | $10,925.00 | $5,175.00 |
| **Counsel** | | | | | |
| Draper, Felicia A. | ($735.00\$400.00) | 2006 CA | 979.30 | $748,510.00 | $391,720.00 |
| Mullin, Mark E. | ($695.00\$375.00) | 2015 CA | 44.90 | $31,505.50 | $16,837.50 |
| **Associate** | | | | | |
| Christopherson, Kathryn S. | ($600.00\$300.00) | 2018 CA | 194.50 | $116,748.00 | $58,350.00 |
| Morrow, Alexander R. | ($575.00\$275.00) | 2021 CA | 5.40 | $3,105.00 | $1,485.00 |
| Van Keulen, Lindsay A. | ($625.00\$300.00) | 2019 CA | 236.50 | $147,812.50 | $70,950.00 |
| **Other Billing Personnel** | | | | | |
| Berggen, Chris R. | ($400.00\$175.00) | NA | 367.90 | $155,862.50 | $64,382.50 |
| Blandino, Phil | ($390.00\$175.00) | NA | 125.50 | $53,103.00 | $21,962.50 |
| Hong, Tyrone H. | ($260.00\$175.00) | NA | 69.20 | $17,992.00 | $12,110.00 |
| Hudson, Amanda J. | ($400.00\$175.00) | NA | 4.80 | $1,920.00 | $840.00 |
| Kalman, Seth | ($320.00\$175.00) | NA | 54.30 | $18,088.00 | $9,502.50 |
| Swanson, Janet | ($200.00\$175.00) | NA | 137.10 | $27,420.00 | $23,992.50 |
| Tahbaz, Michael H. | ($215.00\$175.00) | NA | 0.50 | $107.50 | $87.50 |

////

KNAPP, PETERSEN & CLARKE

-15-

69. Using these adjusted rates results in a reimbursement of $1,297,592.50 for Shartsis and $1,662,397.50 for Altshuler, or a total reimbursement of $2,959,990.

70. The rate reduction, as supported by Real Rate Report survey, and other factors discussed rates results in a rate reduction of 42% which realizes an average hourly rate of $314.79 for Altschuler and 50.5% for Shartsis, for an average hourly rate of $348.94. This average rate includes attorneys and non-attorneys alike, and are for more appropriate for their staffing mix, and with this type of matter. It is also consistent with the rates offered by Valley Forge.

## EXCESSIVE TIME BILLED BY BOTH ALTSCHULER AND SHARTSIS

71. Defense requests reimbursement of 8,999.70 hours billed for a period of just 14 months. This would equate to one attorney working full time for a period of 225 weeks.

72. I observed multiple billing issues that warrant reductions, however as the focus of my work has been on the excessive hourly rates I will simply comment on them here, unless my work is expanded to included that analysis in the future.

73. In addition to the unreasonable excessive hourly rate and staffing choices by both Altschuler and Shartsis, there are also concerns regarding the work performed. An excessive number of hours were billed in the preparation of work product, and preparation for the arbitration. Multiple timekeepers attended Court hearings and the arbitration. By way of example, I identified up to **seven** timekeepers who each attended the arbitration for Shartsis, and **seven** for Altshuler on the same date(s). Many of those who attended described their work on that date simply as "trial," with no further explanation of the tasks performed. These include non-attorneys. I also identified numerous status conferences and other hearings that were attended by multiple timekeepers from each firm.

74. Services included in the invoices also included work on a counter claim, and work on defense of claims that are not within the scope of covered claims under the policy of insurance issued herein. These are often included in billing entries with other services, especially with respect to the block billing by Altshuler timekeepers. I reserve the right to further allocate as to the affirmative activity if additional information is provided which

-16-

6818190.1 03014/01761

would allow such allocation. Affirmative activity is clearly not recoverable as defense fees. The firms have an obligation to exclude these services from fees submitted to Valley Forge, or to identify and "write off" those fees. Given the billing issues I identified, including vague billing descriptions and block billing it is not clear the extent of this affirmative billing, however there are enough entries that are described to make it apparent that this work is included in the fees submitted herein.

75. Not all services performed in the course of litigation are compensable as professional legal services. Included within the overhead of a law firm are tasks typically performed by competent legal secretaries or members of the clerical staff. Overhead tasks identified include such as "load documents" into a document review database for review by attorneys, or "edit transcription of voice mail messages" (Shartsis), and "organize documents into SharePoint," "create password-protected folder" (Altshuler). Overhead tasks billed by attorneys include "attended Relatively training." All of these tasks are secretarial or administrative and are typically regarded as overhead by courts. In my opinion and a reduction of the overhead hours and fees is warranted.

76. Courts have reduced time spent on filing, document organization and other clerical matters that should be covered in hourly rates as normal overhead. See *Ralph W. Keith et al. v. John A. Volpe*, et al. 644 F.Supp. 1312 (C.D. Call. 1986).

77. In addition to billing for overhead activity, I identified an excessive amount of time spent in interoffice conferencing and "team meetings." Excessive conferencing is typically criticized by courts. While it is important for attorneys and others to stay informed and strategize, conferencing at the levels observed here is inappropriate. This was escalated by the excessive number of timekeepers.

78. I also observed vague billing descriptions such as "correspondence" and "document review" without any further explanation. There is not sufficient information provided to determine the reasonableness of the time billed. Given that fees are not recoverable for certain work including affirmative activity, as well as defense of claims

////

-17-

6818190.1  03014/01761

against Abrams and Perkins for solicitation and intentional acts, it is important that all services be clearly identified.

79. Attorneys at Altschuler frequently presented their time in "block billing," which is the combining of multiple entries with a variety of tasks performed in a single day in one entry with the aggregate time for the entire day billed. This practice, which is criticized by the courts, who have opined that it can result in overbilling as high as 30%, See *In Re Chicago Lutheran Hospital*,89 B.R. 719 (Bankr. N.D. Ill. 1988)

80. Costs by Shartsis include "hard drive," "supplies", "trial supplies" and "meal expense." These are typically overhead expenses also included in the cost of a law firm's operating expenses, and not appropriately billed to a client or insurance company.

81. I have not offered any specific monetary reductions as a result of these excessive billing practices. Given the relatively small number of substantive services and the very high number of hours billed, I believe that a full audit would likely result additional reductions to the fees of both firms. I make these observations as part of my overall opinion that the fees and costs billed by Shartsis and Altschuler are excessive and unreasonable.

**CONCLUSION**

82. The fees invoiced by Altschuler and Shartsis for defense in the *Peiffer* matter are excessive and unreasonable.

83. The hourly rates requested are excessive and not aligned with community rates for the nature of their work as reflected in The Real Rate Report. The rates offered by Valley Forge were reasonable and appropriate in the Insurance Defense market. The staffing choices and overstaffing caused excessive and unreasonable fees.

84. This billing as presented lasted approximately fourteen months, yet the firms billed 8,999.7 hours, an astonishing number given the relatively minor number of services performed. This is the equivalent of one attorney working full time for 225 weeks, or almost 4 ½ years, an astonishing number given the services performed.

////

-18-

KNAPP, PETERSEN & CLARKE

6818190.1 03014/01761

85. The firms billed for services including affirmative activity which is not reasonably compensable by Valley Forge.

86. Shartsis and Altschuler both improperly staffed attendance at court and the arbitration with an unwarranted number of personnel.

87. There were improper instances of administrative billing as well as excessive interoffice communications and vague billing entries. Altschuler time including inappropriately block billed entries.

88. I have adjusted the hourly rates to a more appropriate rate for each timekeeper taking into consideration their level of experience, and also considering the nature of the litigation and the location.

89. Although I have referenced other billing issues, I have not quantified them or taken any further reductions, which may be appropriate.

90. Of the $6,558,920 requested in attorneys' fees it is my opinion that a maximum reimbursement amount of $2,959,990 in fees is recommended. I have offered no opinion as the costs billed herein. A further review of the services performed and billing issues identified, including further information regarding the vague billing entries, would likely result in a recommended further reduction of at least 15-25%.

91. Payment of the amount recommended herein would generously compensate for the services performed at more reasonable rates, without any consideration as to the affirmative activity and overbilling issues, which likely resulted from excessive staffing and duplication of effort, as well as the other issues discussed.

Dated: September 30, 2024

By: _____
André E. Jardini

KNAPP, PETERSEN & CLARKE

-19-