UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PEIFFER WOLF CARR KANE CONWAY & WISE, LLP, **Plaintiff** | CIVIL ACTION |
| **VERSUS** | NO.  23-6235 |
| VALLEY FORGE INSURANCE COMPANY, **Defendant** | SECTION: "E" (3) |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant Valley Forge Insurance Company ("Defendant" or "Valley Forge").[1] Plaintiff opposes Defendant's motion.[2] Defendant filed a reply in support of its motion.[3]

## BACKGROUND

This case arises from a dispute over a commercial general liability insurance policy (the "Policy") issued by Defendant to Plaintiff.[4] On May 5, 2023, law firm Levin Simes, LLP ("Levin Simes") filed a complaint in the Superior Court of the State of California in and for the County of San Francisco (the "Levin Simes Lawsuit") against Peiffer Wolf and its partners, Rachel Abrams ("Abrams") and Brian Perkins ("Perkins").[5] Peiffer Wolf tendered that complaint to its insurer, Valley Forge, for defense and indemnity claiming the alleged conduct underlying the Levin Simes Lawsuit falls within the coverage of the Policy.[6] On July 31, 2023, Defendant "acknowledged, subject to a reservation of rights, that it owed [Peiffer Wolf] a defense against the Levin Simes Lawsuit" under the Policy.[7]

---

[1] R. Doc. 65.
[2] R. Doc. 79.
[3] R. Doc. 95.
[4] R. Doc. 5 at pp. 1-2.
[5] *Id.* at p. 3.
[6] *Id.* at pp. 2-3.
[7] *Id.* at p. 3.

1

The parties disagree over the extent of Defendant's responsibility for funding Plaintiff's defense in the Levin Simes Lawsuit.

On October 19, 2023, Peiffer Wolf filed its amended complaint in this Court alleging Valley Forge improperly refused to pay hourly rates charged by Peiffer Wolf's California independent defense counsel,[8] "and instead assert[ed], falsely that [Defendant's] payment obligations are 'capped' at the rates it pays to its 'panel counsel[,]' [which] are far less than the reasonable rates charged by [the] [independent] [d]efense [c]ounsel."[9] Plaintiff asserts claims against Defendant for declaratory judgment "confirming [Defendant] is obligated to pay and/or reimburse Peiffer Wolf, and Abrams/Perkins, for the reasonable defense costs each incurs in defense of the Levin Simes Lawsuit,"[10] breach of contract,[11] and penalties and damages for violating Louisiana Revised Statutes §§ 22:1892 and 22:1973.[12]

On January 14, 2024, Valley Forge filed a motion to compel this litigation be arbitrated in accordance with California law.[13] The Court denied this motion on April 16, 2024.[14]

After the close of discovery, both parties moved for summary judgment.[15] In Defendant's motion for summary judgment, Defendant seeks judgment that (1) it paid Plaintiff reasonable rates for Plaintiff's defense costs in the Levin Simes Lawsuit and (2)

---

[8] *Id.* at p. 4.
[9] *Id.* at p. 4.
[10] *Id.* at p. 5.
[11] *Id.* at p. 6.
[12] *Id.* at pp. 6-8.
[13] R. Doc. 12.
[14] R. Doc. 23.
[15] R. Doc. 65; R. Doc. 69.

Defendant did not violate La. R.S. §§ 22:1892 and 22:1973.[16] Defendant argues the Court should grant summary judgment denying all of Plaintiff's claims.[17]

This order and reasons addresses only Defendant's motion for summary judgment that (1) it paid Plaintiff reasonable rates for Plaintiff's defense costs in the Levin Simes Lawsuit and (2) it did not violate La. R.S. § 22:1973 when Paul Mancuso ("Mancuso") initially denied Plaintiff coverage under the Policy.

## UNDISPUTED FACTS

On May 5, 2023, Levin Simes sued Peiffer Wolf, Abrams, and Perkins for misappropriation of trade secrets, aiding and abetting of a breach of fiduciary duty, intentional interference with contractual relationships, intentional interference with prospective economic advantage, and unfair competition.[18] Levin Simes filed suit after Abrams and Perkins left Levin Simes and joined Peiffer Wolf.[19] The Levin Simes Lawsuit is currently pending in arbitration in California.[20] In the Levin Simes Lawsuit, Peiffer Wolf filed counterclaims against Levin Simes and sought damages for interference with Peiffer Wolf's relationship with former Levin Simes clients.[21] Abrams also filed a counterclaim in the Levin Simes Lawsuit.[22]

Peiffer Wolf hired Altshuler Berzon, LLP ("Altshuler") to represent it in the Levin Simes Lawsuit.[23] Additionally, Peiffer Wolf hired Shartsis Friese LLP ("Shartsis") to

---

[16] R. Doc. 65.
[17] *Id.* at p. 7. In Plaintiff's cross-motion for partial summary judgment, Plaintiff asks for summary judgment that (1) Plaintiff did submit satisfactory proof of loss and (2) Defendant did act in bad faith when it failed to pay certain invoices within thirty days. R. Doc. 69-1.
[18] R. Doc. 65-1 at ¶ 1; R. Doc. 79-2 at ¶ 1.
[19] R. Doc. 65-1 at ¶ 1; R. Doc. 79-2 at ¶ 1.
[20] R. Doc. 65-1 at ¶ 1; R. Doc. 79-2 at ¶ 1.
[21] R. Doc. 65-1 at ¶ 2; R. Doc. 79-2 at ¶ 2.
[22] R. Doc. 65-1 at ¶ 9; R. Doc. 79-2 at ¶ 9.
[23] R. Doc. 65-1 at ¶ 3; R. Doc. 79-2 at ¶ 3.

represent Abrams and Perkins in the Levin Simes Lawsuit.[24] With respect to Altschuler, Peiffer Wolf agreed to pay hourly rates between $1,000 and $1,275 for partners, between $625 and $700 for associates, and between $325 and $350 for other personnel.[25] With respect to Shartsis, Peiffer Wolf agreed to pay hourly rates between $875 and $1,100 for partners, between $575 and $735 for associates, and between $200 and $400 for other personnel.[26]

Peiffer Wolf, Abrams, and Perkins tendered the Levin Simes Lawsuit to Defendant on May 12, 2023 and sought defense under the Policy.[27] On May 18, 2023, Mancuso issued a letter denying coverage to Peiffer Wolf, Abrams, and Perkins.[28] This letter stated Valley Forge's obligation is to pay "damages because of 'bodily injury' or 'property damage' caused by an 'occurrence,' or 'personal and advertising injury'" that it is legally obligated to pay under the Policy.[29] Mancuso's letter then identifies the "following pertinent provisions" under the Policy: (1) "bodily injury"; (2) "occurrence"; and (3) "property damage."[30] Next, Mancuso writes, "[t]he allegations in the [Levin Simes Lawsuit] do not meet the insuring agreement of the policy."[31] In the letter, Mancuso stated that Broadspire Services, Inc. ("Broadspire"), on behalf of Valley Forge, "reserve[d] the right to rely upon all of the policy's provisions."[32]

Defendant later agreed to defend Peiffer Wolf, Abrams, and Perkins in the Levin Simes Lawsuit subject to a reservation of rights.[33] In Defendant's reservation of rights

---

[24] R. Doc. 65-1 at ¶ 4; R. Doc. 79-2 at ¶ 4.
[25] R. Doc. 65-1 at ¶ 5; R. Doc. 79-2 at ¶ 5.
[26] R. Doc. 65-1 at ¶ 6; R. Doc. 79-2 at ¶ 6.
[27] R. Doc. 65-1 at ¶ 10; R. Doc. 79-2 at ¶ 10; R. Doc. 65-11.
[28] R. Doc. 65-1 at ¶ 12; R. Doc. 79-1 at ¶ 9; R. Doc. 65-13.
[29] R. Doc. 65-13 at p. 3.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] R. Doc. 65-1 at ¶ 16; R. Doc. 79-2 at ¶ 16.

letter, sent by Kara Egan ("Egan"),[34] Valley Forge explained that its decision to defend Peiffer Wolf, Abrams, and Perkins was based on allegations that might amount to "personal and advertising injury" under the Policy.[35] Also, in Defendant's reservation of rights letter, Defendant offered to pay Altshuler and Shartsis at Defendant's panel counsel rates.[36] Peiffer Wolf declined this offer.[37]

## DISPUTED FACTS

Defendant, in its answers to interrogatories, stated that it analyzes several factors in determining rates it will pay a law firm, including (1) the nature of the dispute, (2) the relationship with the law firm, (3) the reputation of the law firm, and (4) the jurisdiction where the suit is pending.[38] Plaintiff admits this is the process that Valley Forge represents it uses, but assets the process "is contrary to applicable law."[39] Defendant's witnesses testified in their depositions that the Levin Simes Matter did not present "any unusual feature or complexity."[40] Plaintiff admits this is the testimony of the Valley Forge witnesses, but disagrees with Defendant's conclusion.[41]

The parties disagree on whether Defendant offered to pay Altshuler and Shartsis at a rate above the rate Defendant normally pays for the defense of suits similar to Plaintiff's.[42] Defendant claims it is an undisputed fact that it offered to pay above normal rates while Plaintiff disputes this and claims Defendant "routinely pays independent counsel" rates above what it offered in this case.[43] Although Defendant claims it is an

---

[34] R. Doc. 65-15.
[35] R. Doc. 65-1 at ¶ 17; R. Doc. 79-2 at ¶ 17.
[36] R. Doc. 65-1 at ¶ 18; R. Doc. 79-2 at ¶ 18.
[37] R. Doc. 65-1 at ¶ 20; R. Doc. 79-2 at ¶ 20.
[38] R. Doc. 65-1 at ¶ 21; R. Doc. 65-18 at p. 2.
[39] R. Doc. 79-2 at ¶ 21.
[40] R. Doc. 65-1 at ¶ 28; R. Doc. 79-2 at ¶ 28; R. Doc 65-38 at pp. 3, 13-14; R. Doc. 65-14 at p. 29.
[41] R. Doc. 79-2 at ¶ 28.
[42] R. Doc. 65-1 at ¶ 20; R. Doc. 79-2 at ¶ 20.
[43] R. Doc. 65-1 at ¶ 20; R. Doc. 79-2 at ¶ 20.

undisputed fact that it uses the same analysis when calculating reasonable rates for panel firms and independent counsel that an insured chooses, Plaintiff disputes this and asserts that Defendant's dealings with independent counsel chosen by the insured are "'separate negotiations' based on panel counsel rates."[44]

Defendant states that it has reimbursed Plaintiff for Altshuler and Shartsis invoices at hourly rates of $375 for senior partners, $325 for junior partners, $275 for associates, and $150 for paralegals.[45] Plaintiff denies this is the case and responds that Defendant "is taking a 25[%] discount on" Altshuler invoices and is paying for less than the claimed amounts.[46]

The parties disagree on whether Defendant is reimbursing Plaintiff reasonable rates for Plaintiff's defense in the Levin Simes Lawsuit. Defendant relies on its retained expert, Andre Jardini ("Jardini") to support its position that it is reimbursing reasonable rates.[47] Jardini analyzed Altshuler's and Shartsis's attorney staffing choices, the "Real Rate Report,"[48] the nature of the Levin Simes Lawsuit, and Althsuler and Shartsis billing entries in his expert report.[49] Jardini concludes that "The rates offered by [Defendant] were reasonable and appropriate in the Insurance Defense market."[50]

Plaintiff cites the opinion of its expert, Richard Pearl ("Pearl"), to support its position that "the rates charged by Altshuler . . . and Shartsis . . . are well within the ranges

---

[44] R. Doc. 65-1 at ¶ 22; R. Doc. 79-2 at ¶ 22.

[45] R. Doc. 65-1 at ¶ 30.

[46] R. Doc. 79-2 at ¶ 30; R. Doc. 65-14 at pp. 44-47. The deposition testimony states that the discount is 15% rather than 25%. *Id.* The deposition testimony later references a 25% discount but does not state when or how this discount applied and how it differs from the 15% discount. *Id.* at pp. 52-54.

[47] R. Doc. 65-2 at pp. 10-12.

[48] The Real Rate Report is a "survey that considers multiple defining criteria relevant to rates, including importantly, the location in which the case is venued. The report identifies rates by location, experience, firm size, areas of expertise, industry, and timekeeper role (i.e., partner, associate, and paralegal)." R. Doc. 65-34 at pp. 9-10.

[49] R. Doc. 65-34.

[50] *Id.* at pp. 18-19.

reasonably charged by similar firms for comparable work."[51] The factors Pearl considered to reach this conclusion were (1) the need for highly-skilled, top-rate attorneys; (2) Althsuler's and Shartsis's credentials, trial experience, and performance; (3) Levin Simes' counsel in the Levin Simes Lawsuit; (4) Pearl's own experience with attorney hourly rates in the relevant market; (5) judicial determinations of the reasonableness of Althsuler's rates; (6) judicial determinations on the reasonableness of other rates in the relevant market; (7) hourly rates in the relevant market; and (8) the Credible Rate Surveys.[52]

The parties dispute whether Mancuso, who was employed by Broadspire,[53] had authority to issue a letter denying coverage on behalf of Valley Forge.[54] Defendant claims Mancuso had only "limited authority" to deny coverage but Plaintiff claims Mancuso was authorized to send the denial letter.[55] Mancuso's authority to "send coverage positions" on behalf of Valley Forge is disputed.[56]

Defendant asserts it is an undisputed fact that Mancuso works for Crawford and Company, Inc. ("Crawford"), which is Defendant's third-party administrator.[57] Plaintiff asserts it is an undisputed fact that Mancuso works for Broadspire.[58] Defendant asserts it is an undisputed fact that it was a mistake for Crawford's file to remain open and for Mancuso to send a denial of coverage letter.[59] Plaintiff disputes that either action was a mistake and states it is undisputed that Defendant's "employees directed Mr. Mancuso to deny the claim, and even approved the denial letter before it was sent out."[60]

---

[51] R. Doc. 79 at pp. 19-21.
[52] R. Doc. 79-19 at pp. 14-23.
[53] R. Doc. 79-4.
[54] R. Doc. 65-1 at ¶ 12; R. Doc. 79-2 at ¶ 12; R. Doc. 79-1 at ¶¶ 9-10.
[55] R. Doc. 65-1 at ¶ 12; R. Doc. 79-2 at ¶ 12.
[56] R. Doc. 65-1 at ¶ 12; R. Doc. 79-2 at ¶ 12.
[57] R. Doc. 65-1 at ¶ 12.
[58] R. Doc. 79-1 at ¶ 9.
[59] R. Doc. 65-1 at ¶ 13.
[60] R. Doc. 79-2 at ¶ 13.

It is disputed whether Egan sent a claim acknowledgment letter to Peifer Wolf on May 18, 2023.[61] While Defendant claims Egan sent the letter, Plaintiff claims it never received it.[62] Defendant asserts it is an undisputed fact that Plaintiff did not contact Egan after Plaintiff received Mancuso's denial letter.[63] Plaintiff, however, disputes this fact and contends that it did interact with Egan after receiving Mancuso's denial letter.[64]

Defendant claims it is an undisputed fact that Egan, its adjuster assigned to the Levin Simes Lawsuit, did not know of Crawford's open file on the Levin Simes Lawsuit, did not know of Mancuso's denial of coverage letter until a year after it was sent, and did not deny coverage.[65] Plaintiff disputes these facts and maintains that Mancuso was the adjuster assigned by Valley Forge to Plaintiff's claim related to the Levin Simes Lawsuit.[66]

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[67] "An issue is material if its resolution could affect the outcome of the action."[68] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[69] All reasonable inferences are drawn in favor of the nonmoving party.[70] There is no genuine issue of material fact if, even viewing the evidence in the light most

---

[61] R. Doc. 65-1 at ¶ 11; R. Doc. 79-2 at ¶ 11.
[62] R. Doc. 65-1 at ¶ 11; R. Doc. 79-1 at ¶¶ 10-11.
[63] R. Doc. 65-1 at ¶ 14.
[64] R. Doc. 79-2 at ¶ 14.
[65] R. Doc. 65-1 at ¶ 15.
[66] R. Doc. 79-2 at ¶ 15.
[67] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[68] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[69] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).
[70] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[71]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[72] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[73]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[74] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the

---

[71] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[72] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

[73] *Celotex*, 477 U.S. at 322-24.

[74] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322-24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

moving party is entitled to summary judgment as a matter of law.[75] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[76] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[77] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[78] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[79]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim.

---

[75] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).
[76] *Celotex*, 477 U.S. at 332-33.
[77] *Id.*
[78] *Id.* at 332-33 & n.3.
[79] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.

'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[80]

## LAW AND ANALYSIS

### I. There is a genuine dispute of material fact on whether Defendant has reimbursed Plaintiff reasonable attorneys' fees.

In its amended complaint, Plaintiff asks the Court for a declaration that Defendant is obligated to pay Plaintiff's reasonable attorneys' fees related to the Levin Simes Lawsuit.[81] Defendant now moves the Court for summary judgment that the fees it has paid Plaintiff thus far are reasonable.[82] The parties agree that, under Louisiana law and the Policy, Defendant owes Plaintiff "reasonable" attorneys' fees and costs for Plaintiff's defense in the Levin Simes Lawsuit.[83] The parties disagree, however, on (1) how to calculate reasonableness and (2) whether Defendant is paying reasonable fees.

Defendant has concluded the rates it is paying Plaintiff are "reflective" of rates paid for similar matters because the Levin Simes Lawsuit "is not one that presents any unusual feature or complexity that justifies a departure from [Defendant's relevant] data points."[84] Plaintiff "vehemently disagrees with Valley Forge's" conclusion.[85]

In its opposition to Defendant's motion for summary judgment, Plaintiff relies on persuasive precedent from the Middle District of Louisiana and the Southern District of New York.[86] In *Louisiana Generating LLC v. Illinois Union Insurance Co.*, No. 10-516,

---

[80] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).
[81] R. Doc. 5 at pp. 5-6, 8.
[82] R. Doc. 65-2 at pp. 7-12.
[83] *Id.* at pp. 7-8; R. Doc. 79 at pp. 14-15; R. Doc. 95 at pp. 2-3; *see also Smith v. Reliance Ins. Co. of Ill.*, 01-888, at p. 15 (La. App. 5 Cir. 1/15/02), 807 So. 2d 1010, 1022; *Liberty Mut. Ins. Co. v. Jotun Paints, Inc.*, 555 F. Supp. 2d 686, 709 (E.D. La. 2008) (citing *Smith*, 807 So. 2d at 1022).
[84] R. Doc. 65-2 at pp. 9-12; R. Doc. 65-1 at ¶¶ 27-28; R. Doc. 79-2 at ¶¶ 27-28.
[85] R. Doc. 79-2 at ¶ 28.
[86] R. Doc. 79 at pp. 13-16.

2014 WL 1270049, at *8 (M.D. La. Mar. 27, 2014), the court found defense costs the plaintiff incurred were reasonable because the plaintiff paid out of pocket for its defense costs and was accordingly incentivized to minimize expenditures.[87] *Louisiana Generating LLC* listed factors relevant to the reasonableness analysis, including "the complexity of the issues presented; the skill required to perform the legal services properly; the high stakes of the underlying litigation and the favorable results obtained by [counsel]; and the experience, reputation, and ability of the firm's attorneys."[88] Plaintiff cites two Southern District of New York cases for the propositions that (1) a reasonable rate is not necessarily the lowest rate and (2) that rates customarily paid by insurers are not a good benchmark for reasonable rates.[89]

Both parties rely on their respective experts, Pearl for Plaintiff and Jardini for Defendant, to support their respective positions on whether Defendant is reimbursing Plaintiff at reasonable rates for its defense in the Levin Simes Lawsuit.[90]

There is a dearth of caselaw on how to determine the reasonableness of attorneys' fees in the context of a dispute between an insured and an insurer for reimbursement of attorneys' fees related to an underlying lawsuit that the insurer's policy admittedly covers. In other areas of the law, though, attorneys' fees "are to be calculated according to the prevailing market rates in the relevant community."[91] Neither party disputes this rule applies in this case. Jardini considered rates within the relevant community and opined

---

[87] *Id.* at pp. 15-16 (citing *La. Generating LLC v. Ill. Union Ins. Co.*, No. 10-516, 2014 WL 1270049, at *8 (M.D. La. Mar. 27, 2014)).

[88] *Id.* (quoting *La. Generating LLC*, 2014 WL 1270049, at *8).

[89] *Id.* at p. 16 (first citing *Danaher Corp. v. Travelers Indem. Co.*, No. 10-121, 2015 WL 409525, at *9 (S.D.N.Y. Jan. 16, 2015), *amended*, 2015 WL 417820 (S.D.N.Y. Jan. 29, 2015), *R. & R. adopted*, 2015 WL 1647435 (S.D.N.Y. Apr. 14, 2015); then *Columbus McKinnon Corp. v. Travelers Indem. Co.*, 367 F. Supp. 3d 123, 157 (S.D.N.Y. 2018)).

[90] R. Doc. 65-2 at pp. 10-12; R. Doc. 79 at pp. 18-21.

[91] *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Johnson*, 488 F.2d 714, 717-18.

that the fees Defendant offered Plaintiff were reasonable.[92] Pearl similarly considered rates within the relevant community and reached the opposite conclusion.[93]

Prevailing market rates is just one factor among many. There are other relevant factors on which the parties' experts also conflict. For example, the experts disagree over the complexity of the Levin Simes Lawsuit and whether it was appropriate for Plaintiff to hire Altshuler and Shartsis given the nature of the Levin Simes Lawsuit.[94] Jardini focuses on Altshuler's and Shartsis's "staffing choices" and "billing issues" while Pearl does not.[95] Pearl analyzes factors that Jardini does not, such as the quality of opposing counsel in the Levin Simes Lawsuit and judicial determinations of reasonable attorneys' fees.[96]

The parties have presented the Court with conflicting expert opinions on whether Defendant is reimbursing Plaintiff for its defense in the Levin Simes Lawsuit at reasonable rates. This Court has held that "questions of material fact remain" when parties offer "conflicting expert testimony."[97] "The weight given to contradictory expert analysis depends on the credibility allocated to each individual expert witness. Assessment of the credibility and weight of expert testimony is the function of the jury. If a material fact cannot be resolved without making a credibility determination, summary judgment is improper."[98] The fact-intensive nature of the reasonableness inquiry also leads the Court to deny summary judgment.[99] Because the parties have presented conflicting expert opinions on whether Defendant is reimbursing Plaintiff for its defense in the Levin Simes

---

[92] R. Doc. 65-2 at p. 10; R. Doc. 65-34 at pp. 9-16, 63-85.
[93] R. Doc. 79-19 at pp. 11-23.
[94] *Id*. at pp. 14-16; R. Doc. 65-34 at pp. 8-16; R. Doc. 65-14 at p. 29; R. Doc. 79-3.
[95] R. Doc. 65-34 at pp. 8-9, 16-18.
[96] R. Doc. 79-19 at pp. 16-23.
[97] *Crappell v. Boh Bros. Const. Co., LLC*, No. 06-1315, 2010 WL 5437277, at *4 (E.D. La. Dec. 21, 2010).
[98] *Lascola v. Schindler Elevator Corp.*, No. 08-4802, 2010 WL 971792, at *3 (E.D. La. Mar. 12, 2010) (internal citations omitted).
[99] *See Yowell v. Seneca Specialty Ins. Co.*, 117 F. Supp. 3d 904, 911 (E.D. Tex. 2015) (citing *Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W. 3d 113, 128 (Tex. Ct. App. 2011)).

Lawsuit at reasonable rates, and because of the fact intensive nature of this inquiry, the Court must deny Defendant summary judgment on this issue.

The Court will not consider arguments related to the substance or admissibility of Jardini's and Pearl's opinions and reports. Such arguments are more properly raised in a *Daubert* motion.

For the sake of completeness, the Court addresses Plaintiff's argument that Defendant has waived the right to argue the Altshuler and Shartsis billing entries were excessive. Plaintiff's argument is that Defendant's motion for summary judgment contains "newly-manufactured assertions that Althsuler's and Shartsis' billings were 'excessive.'"[100] Plaintiff argues that Defendant has waived these arguments because "[f]or more than a year. . . [Defendant] did not dispute a single minute of time as excessive, unjustified, duplicative, or otherwise.[101] "Waiver is the intentional relinquishment of a known right, power or privilege."[102] An individual or entity waives a right "when there is an existing right, a knowledge of its existence, and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished."[103] "When a carrier is reasonably aware of a defense to coverage and continues to renew the policy with no notice to the insured, as if the defense does not exist, then that defense is waived."[104] Because Defendant "never brought forth

---

[100] R. Doc. 79 at p. 21.
[101] *Id.* at pp. 21-22.
[102] *Zydeco's II, LLC v. Certain Underwriters at Lloyd's, London*, No. 19-562, at p. 41 (La. App. 5 Cir. 5/28/21), 356 So. 3d 345, 376 (citing *Tate v. Charles Aguillard Ins. & Real Est., Inc.*, 508 So.2d 1371, 1373-74 (La. 1987)).
[103] *Id.*
[104] *Id.* at 377-78 (citing *Steptore v. Masco Const. Co., Inc.*, 93-2064, p. 4 (La. 8/18/94), 643 So.2d 1213, 1216).

issues regarding supposed 'excessive' billing prior to this" motion, Plaintiff argues Defendant has waived excessive billing arguments.[105]

In response, Defendant argues that it did raise the issue of excessive billing in an October 12, 2023 letter it sent to Plaintiff.[106] However, in this letter, Defendant does not state that Plaintiff has agreed to pay excessive billing rates. Defendant does state that under California law, it is obligated to pay only "the hourly rate 'actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended.'"[107] Defendant then states it "will only pay the reasonable and necessary fees and costs incurred by the insureds in the defense of this matter."[108]

Plaintiff's waiver argument relies on cases arising in the context of an insurer denying coverage to the insured or raising a defense to coverage rather than in the context of an insurer raising an argument on the inapplicability of statutory penalties. For example, in *Zydeco's II, LLC v. Certain Underwriters at Lloyd's, London* the Louisiana Fifth Circuit Court of Appeals held that the insurer waived a statutory defense under La. R.S. § 22:1314 (inapplicable in this case) when it had knowledge of the defense's applicability and "nonetheless provided coverage."[109]

In this case, the issue of excessive billing is related to whether the fees charged are reasonable. Because the reasonableness of the fees is in dispute, the waiver argument is irrelevant in this case.

---

[105] R. Doc. 79 at p. 23.
[106] R. Doc. 95 at pp. 6-7; R. Doc. 65-16.
[107] R. Doc. 65-16 at p. 2.
[108] *Id.*
[109] 356 So. 3d at 377-78. Revised Statute "22:1314 allows an insurer to deny coverage when an insured has breached a condition contained in a fire insurance policy if the condition (1) existed at the time of the loss, and (2) is of the type that would increase either the moral or physical hazard under the policy." *Id.* at 375.

**II.  There is a genuine dispute of material fact as to whether Defendant is liable under Louisiana Revised Statute Section 22:1973 for misrepresenting pertinent facts.**

Plaintiff brings claims for damages for Defendant's alleged violation of Louisiana Revised Statutes §§ 22:1892 and 22:1973.[110] In this order, the Court addresses only the Defendant's motion for summary judgment that Mancuso's denial letter was not a misrepresentation under § 22:1973.

Section 22:1973A. states that "An insurer owes to his insured a duty of good faith and fair dealing." An insurer breaches this duty when it knowingly misrepresents "pertinent facts or insurance policy provisions relating to any coverages at issue."[111] "A 'misrepresentation' occurs when an 'an insurer either makes untrue statements to an insured concerning pertinent facts [of a policy] or fails to divulge pertinent facts to the insured.'"[112] The misrepresentation must "relate to a 'coverage issue' which would 'involve facts about the policy itself, such as the amount of coverage, lapse or expiration of the policy, or exclusions from coverage.'"[113] "A communication from the insurer that either states an untruth or fails to state the truth is contemplated by [§ 22:1973](B)."[114]

Whether or not the insured reasonably relied on the misrepresentation is irrelevant.[115] Neither must the insured prove that it suffered actual damages to recover statutory penalties pursuant to § 22:1973.[116]

---

[110] R. Doc. 5 at pp. 6-8.

[111] La. R.S. § 22:1973B.(1).

[112] *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 740 (5th Cir. 2010) (quoting *McGee v. Omni Ins. Co.*, 2002-1012, p. 11 (La. App. 3 Cir. 3/5/03), 840 So. 2d 1248, 1256)).

[113] *Id.* (quoting *Imperial Trading Co. v. Travelers Prop. Cas. Co.*, No. 06-4262, 2009 WL 2356290, at *3 (E.D. La. July 27, 2009)).

[114] *Kelly v. State Farm Fire & Cas. Co.*, 2014-1921, p. 23 (La. 5/5/15), 169 So. 3d 328, 342.

[115] *Versai Mgmt. Corp.*, 597 F.3d at 740.

[116] *Wegener v. Lafayette Ins. Co.*, 2010-0810, at p. 17 (La. 3/15/11), 60 So. 3d 1220, 1232; *see also Drago v. Sykes*, 19 F. Supp. 3d 685, 689 (E.D. La. 2014) ("State Farm argues that the plaintiff cannot establish that he suffered any damages as a result of the alleged misrepresentation and, therefore, is limited to recovering the $5,000 penalty provided in the statute. The Court agrees.").

Defendant asks the Court for summary judgment that Mancuso's denial letter was not a violation of § 22:1973B.(1).[117] Mancuso is an employee of Defendant's third-party claims administrator.[118] It is undisputed that on May 18, 2023, Mancuso issued a letter to Plaintiff "on behalf of Valley Forge Insurance Co." denying Plaintiff coverage for the Levin Simes Lawsuit.[119] This letter states that under the Policy Defendant will pay "damages because of 'bodily injury' or 'property damage' caused by an 'occurrence,' or 'personal and advertising injury.'"[120] In reality, the Policy covers the Levin Simes Lawsuit under the Policy's personal and advertising injury provisions.[121] The letter identifies only "the following pertinent provisions," (1) "bodily injury," (2) "occurrence," and (3) "property damage."[122] In the letter, Mancuso stated, "[i]n connection with our coverage determination, we have quoted and/or paraphrased the policy language. However, we reserve the right to rely upon all of the policy's provisions, whether or not specifically quoted and/or paraphrased in this letter."[123]

Defendant, citing to Egan's deposition testimony, claims that it is undisputed that it was merely a "mistake" for Mancuso's file to remain open because Mancuso lacked authority to handle personal and advertising injury claims, like Plaintiff's.[124] Defendant states it is undisputed that, the same day Mancuso sent his denial letter, Egan sent an acknowledgment letter to Plaintiff, stating she was Defendant's claim specialist assigned to Plaintiff's claim.[125] Defendant claims it is undisputed that Plaintiff "did not contact

---

[117] R. Doc. 65-2 at pp. 14-16.
[118] R. Doc. 65-1 at ¶ 12; R. Doc. 65-13 at p. 3.
[119] R. Doc. 65-1 at ¶ 12; R. Doc. 79-1 at ¶ 9; R. Doc. 79-4; R. Doc. 65-13.
[120] R. Doc. 65-13 at p. 3.
[121] R. Doc. 65-15.
[122] R. Doc. 65-13 at p. 3.
[123] *Id.*
[124] R. Doc. 65-1 at ¶¶ 12-13; R. Doc. 65-2 at p. 14; R. Doc. 65-14 at pp. 23-24, 33, 35-36, 79-80.
[125] R. Doc. 65-12; R. Doc. 65-1 at ¶ 11.

[Egan] after receiving the Mancuso letter."[126] Defendant states it is undisputed that its adjuster, Egan, assigned to the Levin Simes Lawsuit "did not know that" its third party claims administrator had an open file for the Levin Simes Lawsuit.[127]

Defendant argues it is an undisputed fact that Mancuso's letter is a misinterpretation/mistake rather than a misrepresentation.[128] Defendant further argues that a misinterpretation is not necessarily a "misrepresentation" as a matter of law. Moreover, Defendant argues that a mistake should not subject it to penalties. Defendant closes with the argument that Plaintiff cannot establish that Mancuso's letter caused damages and thus Plaintiff is not entitled to statutory damages.[129]

In opposition, Plaintiff states it is undisputed that it never received Egan's letter and "had no reason to know . . . two adjusters were appointed to the same claim, but only one . . . had authority to make claims determinations."[130] Plaintiff disputes whether Mancuso was authorized to issue his denial letter citing Egan's deposition testimony. Plaintiff also disputes whether it was a mistake for Mancuso's file to remain open.[131] Plaintiff asserts it is undisputed that Mancuso's "denial was directed by [Defendant], approved by [Defendant], and on June 9 [Defendant] formally closed the claim."[132]

### A. Whether Defendant had knowledge of Mancuso's letter denying Plaintiff coverage is a disputed fact.

Defendant is not entitled to summary judgment that Mancuso's denial letter was not a misrepresentation under § 22:1973B.(1). Whether Defendant had knowledge of

---

[126] R. Doc. 65-1 at ¶ 14; R. Doc. 65-2 at p. 15.
[127] R. Doc. 65-1 at ¶ 15; R. Doc. 65-14 at pp. 35-36.
[128] R. Doc. 65-2 at p. 15; R. Doc. 95 at p. 9.
[129] R. Doc. 65-2 at pp. 15-16.
[130] R. Doc. 79 at p. 25; R. Doc. 79-3 at ¶ 12.
[131] R. Doc. 79 at pp. 25-26; R. Doc. 79-1 at ¶¶ 10-11 (citing R. Doc. 65-14 at p. 77); R. Doc. 79-2 at ¶¶ 12-13.
[132] R. Doc. 79-1 at ¶ 10; R. Doc. 79-3 at ¶ 11; R. Doc. 79-6; R. Doc. 79-7; R. Doc. 79-8.

Mancuso's alleged misrepresentation is a disputed fact.[133] While Defendant states it is undisputed that Egan did not know of Mancuso's open file on the Levin Simes Matter,[134] Plaintiff states it is undisputed that Defendant directed and approved Mancuso's denial letter.[135] Because the parties dispute Defendant's knowledge, through Egan or otherwise, of Mancuso's denial letter, the Court will not grant summary judgment that Mancuso's denial letter was not a misrepresentation under § 22:1973B.(1).[136]

### B. Whether Mancuso's denial letter was a misrepresentation is a disputed fact and the Court cannot conclude that the letter was not a misrepresentation as a matter of law.

Defendant's argument that Mancuso's letter was a mistake or a misinterpretation, rather than a misrepresentation, is disputed.[137] Mancuso's letter stated, "[t]he allegations in the lawsuit do not meet the insuring agreement of the policy."[138] Defendant cannot deny that this is literally incorrect given Egan's letter stating that Defendant agrees to defend Plaintiff "under the policy's personal and advertising injury coverage with respect to the" Levin Simes Lawsuit.[139] If a material fact cannot be resolved without making a credibility determination, summary judgment is improper.[140] Assessment of whether Mancuso's letter contained a misrepresentation or a misinterpretation is properly assigned to the jury.[141]

---

[133] R. Doc. 65-1 at ¶ 15; R. Doc. 65-14 at pp. 35-36; R. Doc. 79-1 at ¶ 10; R. Doc. 79-2 at ¶ 15; R. Doc. 79-3 at ¶ 11; R. Doc. 79-6; R. Doc. 79-7; R. Doc. 79-8.
[134] R. Doc. 65-1 at ¶ 15; R. Doc. 65-14 at pp. 35-36.
[135] R. Doc. 79-1 at ¶ 10; R. Doc. 79-3 at ¶ 11; R. Doc. 79-6; R. Doc. 79-7; R. Doc. 79-8.
[136] *See Homestead Ins. Co. v. Guarantee Mut. Life Co.*, 459 Fed. App'x 398, 403 (5th Cir. 2012).
[137] R. Doc. 65-1 at ¶ 13; R. Doc. 79-2 at ¶ 13; R. Doc. 65-14 at pp. 23-24, 79-80; R. Doc. 65-13; R. Doc. 65-15.
[138] R. Doc. 65-13 at p. 3.
[139] R. Doc. 65-15 at p. 1.
[140] *Lascola*, 2010 WL 971792, at *3
[141] *Walker v. Gov't Pers. Mut. Life Ins. Co.*, No. 23-303, 2024 WL 4520677 (W.D. La. Oct. 17, 2024).

### C. Plaintiff does not need to prove actual damages to prevail on its § 22:1973 arguments.

Defendant's argument that Plaintiff has suffered no damages on this claim is irrelevant. Plaintiff is correct to point out that, at the very least, it may be entitled to statutory penalties under § 22:1973C.[142] Plaintiff need not prove actual damages to recover statutory penalties.[143]

## III. The Court will address the remaining issues in a separate order.

The Court will address all remaining grounds for summary judgment not discussed in this order and reasons in a separate order.

### CONCLUSION

**IT IS ORDERED** that Defendant's motion for summary judgment[144] that (1) Defendant is reimbursing Plaintiff for the defense in the Levin Simes Lawsuit at reasonable rates[145] and (2) Mancuso's denial of Plaintiff's claim was not a statutory violation[146] is **DENIED**.

**New Orleans, Louisiana, this 20th day of November, 2024.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[142] *Wegener*, 60 So. 3d at 1232; *Drago*, 19 F. Supp. 3d at 689.
[143] *Wegener*, 60 So. 3d at 1232; *Drago*, 19 F. Supp. 3d at 689.
[144] R. Doc. 65.
[145] R. Doc. 65-2 at pp. 7-12.
[146] *Id.* at pp. 12-16.