UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PEIFFER WOLF CARR KANE CONWAY                    CIVIL ACTION
& WISE, LLP,
                    Plaintiff

VERSUS                                           NO.  23-6235

VALLEY FORGE INSURANCE COMPANY,                  SECTION: "E" (3)
                    Defendant

## ORDER AND REASONS

Before the Court are: (1) a motion for summary judgment filed by Defendant Valley

Forge Insurance Company ("Defendant" or "Valley Forge"),[1] and (2) a cross-motion for

partial summary judgment filed by Plaintiff Peiffer Wolf Carr Kane Conway & Wise, LLP

("Plaintiff" or "Peiffer Wolf").[2]  Plaintiff opposes Defendant's motion,[3] and Defendant

opposes Plaintiff's cross-motion.[4] Defendant filed a reply in support of its motion for

summary judgment and Plaintiff filed a reply in support of its cross-motion for partial

summary judgment.[5]

## PROCEDURAL BACKGROUND

This case arises from a dispute over a commercial general liability insurance policy

(the "Policy") issued by Defendant to Plaintiff.[6] On May 5, 2023, law firm Levin Simes,

LLP ("Levin Simes") filed a complaint in the Superior Court of the State of California in

and for the County of San Francisco (the "Levin Simes Lawsuit") against Peiffer Wolf and

its partners, Rachel Abrams ("Abrams") and Brian Perkins ("Perkins").[7] Peiffer Wolf

---

[1] R. Doc. 65.
[2] R. Doc. 69.
[3] R. Doc. 79.
[4] R. Doc. 77.
[5] R. Doc. 94; R. Doc. 95.
[6] R. Doc. 5 at pp. 1-2.
[7] *Id.* at p. 3.

tendered that complaint to its insurer, Valley Forge, for defense and indemnity claiming the alleged conduct underlying the Levin Simes Lawsuit falls within the Policy's coverage.[8] On July 31, 2023, Defendant "acknowledged, subject to a reservation of rights, that it owed [Peiffer Wolf] a defense against the Levin Simes Lawsuit" under the Policy.[9] The parties disagree over the extent of Defendant's responsibility for funding Plaintiff's defense in the Levin Simes Lawsuit.

On October 19, 2023, Peiffer Wolf filed its amended complaint in this Court alleging Valley Forge improperly refused to pay hourly rates charged by its California independent defense counsel,[10] "and instead assert[ed], falsely that [Defendant's] payment obligations are 'capped' at the rates it pays to its 'panel counsel[,]' [which] are far less than the reasonable rates charged by [the] [independent] [d]efense [c]ounsel."[11] Plaintiff asserts claims against Defendant for declaratory judgment "confirming [Defendant] is obligated to pay and/or reimburse Peiffer Wolf, and Abrams/Perkins, for the reasonable defense costs each incurs in defense of the Levin Simes Lawsuit,"[12] breach of contract,[13] and penalties and damages for violating Louisiana Revised Statutes §§ 22:1892 and 22:1973.[14]

On January 14, 2024, Valley Forge filed a motion to compel this litigation be arbitrated in accordance with California law.[15] The Court denied this motion on April 16, 2024.[16]

---

[8] *Id.* at pp. 2-3.
[9] *Id.* at p. 3.
[10] *Id.* at p. 4.
[11] *Id.*
[12] *Id.* at p. 5.
[13] *Id.* at p. 6.
[14] *Id.* at pp. 6-8.
[15] R. Doc. 12.
[16] R. Doc. 23.

After the close of discovery, both parties moved for summary judgment.[17] In Defendant's motion for summary judgment, Defendant seeks judgment that (1) it paid Plaintiff reasonable rates for Plaintiff's defense costs in the Levin Simes Lawsuit and (2) Defendant did not violate La. R.S. §§ 22:1892 and 22:1973.[18] The Court has entered a separate order and reasons addressing the reasonableness issue and whether Defendant made a policy misrepresentation in violation of § 22:1973.[19] Pertinent to this order and reasons, as part of Defendant's request for summary judgment that it does not owe penalties under §§ 22:1892, Defendant claims it is undisputed that Plaintiff never submitted satisfactory proof of loss and that Defendant did not act in bad faith.[20] Defendant argues the Court should grant summary judgment denying all of Plaintiff's claims.[21] In Plaintiff's cross-motion for partial summary judgment, Plaintiff asks for summary judgment that (1) Plaintiff did submit satisfactory proof of loss and (2) Defendant did act in bad faith when it failed to pay certain invoices within thirty days.[22]

This order and reasons only addresses the parties' arguments under La. R.S. §§ 22:1892 on (1) satisfactory proof of loss and (2) Defendant's alleged bad faith.

## UNDISPUTED FACTS

Defendant issued a policy of liability insurance to Plaintiff.[23] Defendant agreed to defend Plaintiff, Abrams, and Perkins in the Levin Simes Lawsuit on July 28, 2023, subject to a reservation of rights.[24] In the Levin Simes Lawsuit, Peiffer Wolf filed

---

[17] R. Doc. 65; R. Doc. 69.
[18] R. Doc. 65.
[19] R. Doc. 125.
[20] R. Doc. 65-2 at pp. 12-23.
[21] *Id.* at p. 7.
[22] R. Doc. 69-1.
[23] R. Doc. 69-2 at ¶ 1; R. Doc. 120 at ¶ 1.
[24] R. Doc. 69-2 at ¶ 2; R. Doc. 120 at ¶ 2.

counterclaims against Levin Simes and sought damages for interference with Peiffer Wolf's relationship with former Levin Simes clients.[25] Abrams filed a counterclaim in the Levin Simes Lawsuit.[26] Defendant did not agree to "fund" Plaintiff's or Abrams' counterclaims in the Levin Simes Lawsuit.[27]

Claim no. W2C03138 is related to Defendant's defense of Plaintiff under the Policy in the Levin Simes Lawsuit.[28] Kara Egan ("Egan") is a claims consultant for claim no. W2C03138.[29] Claim no. E2H40431 is related to Defendant's defense of Abrams and Perkins in the Levin Simes Lawsuit.[30] Abigail Afridi ("Afridi") is a claims consultant for claim no. E2H40431.[31]

On September 20, 2023, Jason Peiffer, on behalf of Plaintiff, sent an e-mail to Egan, as claims adjustor for Defendant, with the following attachments: (1) an August 16, 2023 Shartsis Friese LLP ("Shartsis") invoice summary; (2) a July 19, 2023 Shartsis invoice summary; (3) an August 15, 2023 Altshuler Berzon LLP ("Altshuler") invoice summary; (4) a June 9, 2023 Altshuler invoice; and (5) a July 11, 2023 Altshuler invoice.[32] Defenant did not pay Plaintiff the amounts in any of these five invoices and invoice summaries within thirty days of September 30, 2023.[33]

On November 27, 2023, Daniel Centner ("Centner"), on behalf of Plaintiff, sent an e-mail to Egan and Afridi, as representatives of Defendant, with the following attachments: (1) an Altshuler invoice dated September 18, 2023; (2) an Altshuler invoice

---

[25] R. Doc. 65-1 at ¶ 2; R. Doc. 79-2 at ¶ 2.
[26] R. Doc. 65-1 at ¶ 9; R. Doc. 79-2 at ¶ 9.
[27] R. Doc. 65-1 at ¶ 30; R. Doc. 65-16 at p. 2.
[28] R. Doc. 69-2 at ¶ 3; R. Doc. 120 at ¶ 3.
[29] R. Doc. 69-2 at ¶ 4; R. Doc. 120 at ¶ 4.
[30] R. Doc. 69-2 at ¶ 5; R. Doc. 120 at ¶ 5.
[31] R. Doc. 69-2 at ¶ 6; R. Doc. 120 at ¶ 6.
[32] R. Doc. 69-2 at ¶ 7; R. Doc. 120 at ¶ 7.
[33] R. Doc. 69-2 at ¶¶ 8-12; R. Doc. 120 at ¶¶ 8-12.

dated October 9, 2023; (3) a Shartsis invoice summary dated September 20, 2023; (4) a Shartsis invoice summary dated November 16, 2023; and (5) a Shartsis invoice summary dated October 19, 2023.[34] Defendant did not pay Plaintiff the amounts in any of these five invoices and invoice summaries within thirty days of November 27, 2024.[35]

On January 9, 2024, Centner, on behalf of Plaintiff, sent an e-mail to Egan and Afridi, as representatives of Defendant, with the following attachments: (1) an Altshuler invoice dated November 8, 2023 and (2) an Altshuler invoice dated December 14, 2023.[36] Defendant did not pay Plaintiff the amount in the either invoice within thirty days of January 9, 2024.[37]

On February 19, 2024, Centner, on behalf of Plaintiff, sent an email to Egan and Afridi, as representatives of Defendant, with the following attachments: (1) an Altshuler invoice dated February 12, 2024 and (2) a Shartsis invoice summary dated February 15, 2024.[38] Defendant did not pay Plaintiff the amount in either invoice within thirty days of February 19, 2024.[39]

On May 21, 2024, Centner, on behalf of Plaintiff, sent an email to Egan and Afridi, as representatives of Defendant, with the following attachments: (1) a Shartsis invoice summary dated May 13, 2024 and (2) an Altshuler invoice dated May 15, 2024.[40] Defendant did not pay Plaintiff the amount in either invoice within thirty days of May 21, 2024.[41]

---

[34] R. Doc. 69-2 at ¶ 13; R. Doc. 120 at ¶ 13.
[35] R. Doc. 69-2 at ¶¶ 14-18; R. Doc. 120 at ¶¶ 14-18.
[36] R. Doc. 69-2 at ¶ 19; R. Doc. 120 at ¶ 19.
[37] R. Doc. 69-2 at ¶ 20; R. Doc. 120 at ¶ 20.
[38] R. Doc. 69-2 at ¶ 21; R. Doc. 120 at ¶ 21.
[39] R. Doc. 69-2 at ¶ 22; R. Doc. 120 at ¶ 22.
[40] R. Doc. 69-2 at ¶ 23; R. Doc. 120 at ¶ 23.
[41] R. Doc. 69-2 at ¶¶ 24-25; R. Doc. 120 at ¶¶ 24-25.

On June 26, 2024, Centner, on behalf of Plaintiff, sent an email to Egan and Afridi, as representatives of Defendant, with the following attachments: (1) an Altshuler invoice dated June 13, 2024 and (2) a Shartsis invoice summary dated June 24, 2024.[42] Defendant did not pay Plaintiff the amount in either invoice within thirty days of June 26, 2024.[43]

On August 5, 2024, Centner, on behalf of Plaintiff, sent an email to Egan and Afridi, as representatives of Defendant, with the following attachments: (1) an Altshuler invoice dated July 22, 2024 and (2) a Shartsis invoice summary dated July 25, 2024.[44] Defendant did not pay Plaintiff the amount in either invoice within thirty days of August 5, 2024.[45]

On August 15, 2024, Centner, on behalf of Plaintiff, sent an email to Egan and Afridi, as representatives of Defendant, with the following attachments: (1) a Shartsis invoice summary dated August 8, 2024 and (2) an Altshuler invoice dated August 14, 2024.[46] Defendant did not pay Plaintiff the amount in either invoice within thirty days of August 15, 2024.[47]

Peiffer Wolf did not request either Altshuler or Shartsis to prepare separate invoices for the defense and for the counterclaim in the Levin Simes Lawsuit.[48] One Altshuler invoice from July 2023 contains an entry, which reads "Prepare cease and desist letter, review RFPS from Levin Simes, emails re same."[49] A different Altshuler invoice from September 2023 for 3.9 hours states "Prepare cease and desist letter; email with

---

[42] R. Doc. 69-2 at ¶ 26; R. Doc. 120 at ¶ 26.
[43] R. Doc. 69-2 at ¶¶ 27-28; R. Doc. 120 at ¶¶ 27-28.
[44] R. Doc. 69-2 at ¶ 29; R. Doc. 120 at ¶ 29.
[45] R. Doc. 69-2 at ¶¶ 30-31; R. Doc. 120 at ¶¶ 30-31.
[46] R. Doc. 69-2 at ¶ 32; R. Doc. 120 at ¶ 32.
[47] R. Doc. 69-2 at ¶¶ 33-34; R. Doc. 120 at ¶¶ 33-34.
[48] R. Doc. 65-1 at ¶ 35; R. Doc. 79-2 at ¶ 35; R. Doc. 65-1 at ¶ 37; R. Doc. 79-2 at ¶ 37.
[49] R. Doc. 65-1 at ¶ 38; R. Doc. 79-2 at ¶ 38.

Frank Cialone; email with Harold Lee."[50] A October 2023 Shartsis invoice includes an entry stating "Draft R. Abrams declaration (1.2)" and "draft Perkins declaration (3.5)."[51]

In November 2023, for Altshuler invoices and October 2023, for Shartsis invoices, Peiffer Wolf admitted that it began submitting invoices before paying the invoices.[52]

## **DISPUTED FACTS**

Defendant states it is an undisputed fact that in November 2023, Plaintiff started providing defense firm invoices to Defendant without stating whether Plaintiff had paid the invoices and that Plaintiff did not submit proof of payment for any invoices after November 2023.[53] Plaintiff denies that these are undisputed facts and claims that it did communicate whether it had paid prior invoices when it transmitted invoices to Defendant.[54]

Defendant claims it is an undisputed fact that Plaintiff did not distinguish between work for the defense and work for the counterclaim in the Altshuler and Shartsis invoices for the Levin Simes Lawsuit.[55] Plaintiff denies that this is an undisputed fact and asserts that the invoices "clearly reflect the work that was performed."[56]

Defendant states it is an undisputed fact that it paid Plaintiff's Altshuler and Shartsis invoices, and continues to do so, at the rates it has agreed to after "it became apparent" the parties could not reach a resolution on the rate.[57] Plaintiff denies this is an undisputed fact because Defendant withheld payment in hope of forcing negotiation and

---

[50] R. Doc. 65-1 at ¶ 39; R. Doc. 79-2 at ¶ 39.
[51] R. Doc. 65-1 at ¶ 40; R. Doc. 79-2 at ¶ 40.
[52] R. Doc. 65-1 at ¶¶ 41-42; R. Doc. 79-2 at ¶¶ 41-42.
[53] R. Doc. 65-1 at ¶¶ 32-33.
[54] R. Doc. 79-2 at ¶¶ 32-33.
[55] R. Doc. 65-1 at ¶¶ 34, 36.
[56] R. Doc. 79-2 at ¶¶ 34, 36.
[57] R. Doc. 65-1 at ¶ 43.

because Defendant's adjustors testified that payment was delayed because Defendant's adjustors "were too busy" and "ran out" of authority to issue payment.[58]

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[59] "An issue is material if its resolution could affect the outcome of the action."[60] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[61] All reasonable inferences are drawn in favor of the nonmoving party.[62] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[63]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[64] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the

---

[58] R. Doc. 79-2 at ¶ 43.

[59] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[60] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[61] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

[62] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[63] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

[64] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[65]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[66] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[67] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[68] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[69] If the movant meets this burden, "the burden of production shifts [back again] to the

---

[65] *Celotex*, 477 U.S. at 322-24.

[66] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322-24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[67] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

[68] *Celotex*, 477 U.S. at 332-33.

[69] *Id.*

nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[70] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[71]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[72]

## LAW AND ANALYSIS

**I.    The Court will not grant either party summary judgment on any element of Plaintiff's claim for Defendant's violation of Louisiana Revised Statute Section 22:1892.**

Plaintiff brings claims for damages for Defendant's alleged violation of Louisiana Revised Statutes §§ 22:1892 and 22:1973.[73] The Court denied Defendant's motion for summary judgment that it did not make a policy misrepresentation under La. R.S. § 22:1973 in a separate order and reasons.[74] Relevant to the motions now before the Court,

---

[70] *Id.* at 332-33 & n.3.
[71] *Id.*; *see also* First Nat'l Bank of Ariz., 391 U.S. at 289.
[72] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).
[73] R. Doc. 5 at pp. 6-8.
[74] R. Doc. 125.

§ 22:1892A.(1) mandates that "All insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured." "[F]ailure to make payment within thirty days after receipt of satisfactory" proof of loss "when the failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss."[75] To prevail on its claim for statutory damages, Plaintiff must show "that (1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause."[76]

Defendant moves for summary judgment that it did not violate § 22:1892 because (1) none of Plaintiff's invoices from Altschuler or Shartsis constitutes satisfactory proof of loss and (2) Defendant did not act arbitrarily, capriciously, or without probable cause.[77]

In Plaintiff's cross-motion for summary judgment, Plaintiff moves for summary judgment that, under § 22:1892, (1) Plaintiff submitted satisfactory proof of loss and (2) Defendant acted arbitrarily, capriciously, or without probable cause when it failed to pay certain invoices within thirty days.[78]

### A. For purposes of Louisiana Revised Statute Section 22:1892, there are genuine issues of material fact in dispute with respect to whether Plaintiff submitted satisfactory proofs of loss.

The parties filed cross motions for summary judgment on whether the Altshuler and Shartsis invoices (the "Invoices") Plaintiff submitted to Defendant constituted "satisfactory proof of loss" under § 22:1892A.(1). Satisfactory proof of loss is relevant

---

[75] La. R.S. § 22:1892B.(1)(a).
[76] *La. Bag Co. v. Audubon Indem. Co.*, 2008-0453, pp. 11-12 (La. 12/2/08), 999 So. 2d 1104, 1112-13.
[77] *Id.* at pp. 16-23.
[78] R. Doc. 69-1 at pp. 4-12.

because insurers must "pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured."[79] Defendant argues the Invoices are not satisfactory proof of loss while Plaintiff argues they are.[80]

In Defendant's motion for summary judgment, Defendant advances three arguments on this issue. First, Defendant quotes the undisputed text of two Altshuler invoices and one Shartsis invoice. It is undisputed that an Altshuler invoice from July 2023 contains an entry, which reads "Prepare cease and desist letter, review RFPS from Levin Simes, emails re same."[81] It is undisputed that a September 2023 Altshuler invoice for 3.9 hours states "Prepare cease and desist letter; email with Frank Cialone; email with Harold Lee."[82] It is undisputed that an October 2023 Shartsis invoice includes an entry stating "Draft R. Abrams declaration (1.2)" and "draft Perkins declaration (3.5)."[83] Defendant argues these three invoices are "unclear or block-billed, such that it is not apparent the extent to which Peiffer Wolf seeks reimbursement for uncovered costs" and concludes that Plaintiff has not submitted satisfactory proof of loss as a matter of law.[84]

Second, Defendant argues the Invoices were not satisfactory proof of loss as a matter of law because, with respect to the Invoices, it is undisputed that Plaintiff did not distinguish between entries for the defense of the Levin Simes Lawsuit and the counterclaim in the Levin Simes Lawsuit.[85] The Policy covers only Invoice entries for the defense, not the counterclaim.[86]

---

[79] La. R.S. § 22:1892A.(1).
[80] R. Doc. 65-2 at pp. 16-21; R. Doc. 69 at pp. 4-6.
[81] R. Doc. 65-1 at ¶ 38; R. Doc. 79-2 at ¶ 38.
[82] R. Doc. 65-1 at ¶ 39; R. Doc. 79-2 at ¶ 39.
[83] R. Doc. 65-1 at ¶ 40; R. Doc. 79-2 at ¶ 40.
[84] R. Doc. 65-2 at pp. 16-19.
[85] *Id.*; R. Doc. 65-1 at ¶¶ 34-37.
[86] R. Doc. 65-16 at p. 2.

Third, Defendant argues that, for Altshuler Invoices after November 2023 and Shartsis Invoices after December 2023, it is an undisputed fact that Plaintiff "stopped informing [Defendant] whether it had paid any invoice it submitted for reimbursement."[87] Defendant asserts these Invoices are not satisfactory proofs of loss as a matter of law because it is undisputed that they do not disclose the date of the "loss," which, in this situation, would allegedly be Plaintiff's payment of fees.[88]

Plaintiff's cross motion for partial summary judgment relies on Louisiana law's definition of satisfactory proof of loss. Plaintiff argues the Invoices, which allegedly "contain detailed billing information about the amounts charged," are satisfactory proof of loss as a matter of law.[89]

In opposition to Plaintiff, Defendant first argues that § 22:1892 is inapplicable in this case. Defendant reasons that Plaintiff does not cite caselaw applying § 22:1892 to a set of facts in which the insurer is reimbursing the insured rather than paying fees directly to counsel.[90] Next, Defendant distinguishes Plaintiff's caselaw as "irrelevant" because it is "in the first party property insurance context."[91] In this case, a third-party commercial liability policy is at issue. There was no property damage and the Policy covers Plaintiff's potential liability to a third-party.

In opposition to Defendant, Plaintiff responds to several of Defendant's arguments. As to Defendant's arguments related to Plaintiff's alleged block-billing and failure to distinguish between work for the defense and for the counterclaim, Plaintiff

---

[87] R. Doc. 65-2 at pp. 19-21; R. Doc. 65-1 at ¶¶ 32-33, 41-42.
[88] R. Doc. 65-2 at pp. 19-21
[89] R. Doc. 69-1 at pp. 4-6.
[90] R. Doc. 77 at pp. 5-6.
[91] *Id.* at p. 6.

does not dispute the text of the invoices Defendant quotes.[92] Instead, Plaintiff responds that these arguments are "irrelevant" to the issue of satisfactory proof of loss as a matter of law because Defendant could have decided "not to pay" for certain "line items in an invoice" and could have excised "that amount from its reimbursement."[93] Plaintiff argues that any block-billed entries or entries it submitted related to counterclaims do "not change the fact that Peiffer Wolf provided the amount it was claiming for losses."[94] Plaintiff further calls attention to the fact that Defendant employs Geoffrey Cohen ("Cohen"), "a full-time bill reviewer/auditor . . . to review and audit invoices presented for payment."[95] Cohen authorized partial payments on bills in the past.

Plaintiff disputes that the Althshuler and Shartsis invoices do not distinguish between work for defense in the Levin Simes Lawsuit and work for the counterclaim. Plaintiff claims the invoices "very clearly reflect the work that was performed."[96]

Plaintiff next states that caselaw "articulates the liberal standard by which satisfactory proof of loss is measured." According to Plaintiff, the liberal standard "applies universally."[97] For example, Plaintiff quotes Louisiana's First Circuit Court of Appeal's statement that "Louisiana has adopted liberal rules concerning the lack of formality relative to proof of loss."[98] Additionally, in *Sevier v. U.S. Fidelity & Guaranty Co.*, the Louisiana Supreme Court wrote that proof of loss is "flexible" and "not required to be in

---

[92] R. Doc. 79-2 at ¶¶ 38-40.
[93] R. Doc. 94 at p. 3.
[94] *Id.*
[95] *Id.* at p. 6.
[96] R. Doc. 79-2 at ¶¶ 34, 36.
[97] R. Doc. 94 at p. 4.
[98] R. Doc. 69-1 at p. 4 (quoting *Richardson v. GEICO Indem. Co.*, 2010-0208, p. 11 (La. App. 1 Cir. 9/10/10), 48 So. 3d 307, 314 (first citing *La. Bag Co.*, 999 So. 2d at 1119; then *Sevier v. U.S. Fidelity & Guar. Co.*, 497 So. 2d 1380, 1384 (La. 1986); and then *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 739 (5th Cir. 2010))).

any formal style."[99] "As long as the insurer receives sufficient information to act on the claim, 'the manner in which it obtains the information is immaterial.'"[100] The *Sevier* court held a handwritten estimate "constituted a satisfactory proof of loss."[101]

Plaintiff finally addresses Defendant's arguments related to Plaintiff's failure to submit proof of payment with certain Invoices.[102] Plaintiff argues there is no caselaw supporting Defendant's position on this issue.[103] Plaintiff claims Defendant "could have asked" Plaintiff if it had questions concerning Plaintiff's payment. Defendant instead opted to pay, to this point, twenty-eight of Plaintiff's Invoices.[104]

"[I]t is well settled that a satisfactory proof of loss is only that which is sufficient to fully apprise the insurer of the insured's claims."[105] The burden is on the insured to prove that it provided satisfactory proof of loss. Whether the insured provided satisfactory proof of loss is a question of fact.[106]

Defendant states it is undisputed that Plaintiff did not distinguish whether some the Invoices are for the defense in the Levin Simes Lawsuit, which it is responsible for, or the counterclaim, which it is not.[107] Defendant further argues that the undisputed text of some of the Invoices are "unclear or block-billed."[108]

---

[99] 497 So. 2d at 1384.
[100] *Id.* (quoting *Austin v. Parker*, 672 F.2d 508, 520 (5th Cir. 1982)).
[101] *Id.*
[102] R. Doc. 94 at pp. 5-7.
[103] *Id.* at p. 5.
[104] *Id.* at p. 6; R. Doc. 79-3 at ¶ 16; R. Doc. 65-1 at ¶¶ 43-44; R. Doc. 79-1 at ¶ 21.
[105] *Anco Insulations, Inc. v. Nat'l Union Fire Ins. Co.*, 787 F.3d 276, 286 (5th Cir. 2015) (internal quotations omitted) (quoting *La. Bag Co.*, 999 So. 2d at 1119).
[106] *Id.* (citing *Boudreaux v. State Farm Mut. Auto. Ins. Co.*, 2004-1339, p. 8 (La. App. 4 Cir. 2/2/05), 896 So. 2d 230, 236).
[107] R. Doc. 65-2 at pp. 16-19; 65-16 at p. 2; R. Doc. 65-1 at ¶¶ 34, 36.
[108] R. Doc. 65-2 at pp. 16-19; R. Doc. 65-1 at ¶¶ 38-40.

With respect to Defendant's argument that it cannot distinguish between time billed for the defense in the Levin Simes Lawsuit or the counterclaim, Plaintiff asserts "[t]he invoices very clearly reflect the work that was performed."[109]

With respect to the block-billing argument, whether or not the billing entries are block-billed or unclear is an inherently factual question. Plaintiff admits the plain text of the billing entries but disputes the clarity and sufficiency of such entries.[110]

Otherwise, Plaintiff offers that, if Defendant "was confused about whether a particular line item was reimbursable (on account of its being for a defense matter or strictly a counter-claim issue), it was able to inquire at the time."[111] Plaintiff also highlights Cohen's role as Defendant's "full-time bill reviewer/auditor."[112] However, these arguments have no bearing on whether Plaintiff submitted satisfactory proof of loss as a matter of law.

Defendant's characterization of the loss as occurring only after Plaintiff issues payment to its counsel is unsupported.[113] Also, Defendant does not support its argument that § 22:1892 is inapplicable in this case. Nor does the Court find this argument credible.[114]

Whether Plaintiff provided satisfactory proof of loss is a question of fact.[115] "Such a question is inappropriate for resolution at the summary judgment stage," because of the

---

[109] R. Doc. 79-2 at ¶¶ 34, 36.
[110] *Id.* at ¶¶ 38-40; R. Doc. 69-1 at pp. 4-6.
[111] R. Doc. 94 at p. 6.
[112] *Id.* at pp. 6-7; R. Doc. 79-1 at ¶ 25.
[113] R. Doc. 65-2 at pp. 19-21.
[114] R. Doc. 77 at pp. 5-6.
[115] *Anco*, 787 F.3d at 286-87.

factual disputes highlighted.[116] Thus, the Court will not grant summary judgment on the satisfactory proof of loss issue.

### B. The jury will decide whether Defendant was in bad faith for its payments that were over thirty days late.

The parties filed cross motions for summary judgment on whether Defendant's failure to pay certain invoices within thirty days was "arbitrary, capricious, or without probable cause" under § 22:1892.[117] The Court has ruled that neither party is entitled to summary judgment on whether Plaintiff submitted satisfactory proofs of loss.[118] The issues of fact with respect to whether Plaintiff submitted adequate proofs of loss also affect whether Defendant acted in bad faith. Summary judgment will be denied.

## <u>CONCLUSION</u>

**IT IS ORDERED** that Defendant's motion for summary judgment[134] that (1) Plaintiff did not submit satisfactory proofs of loss[135] and (2) Defendant's failure to pay certain invoices within thirty days was not arbitrary, capricious, or without probable cause[136] is **DENIED**.

---

[116] *Causey v. State Farm Mut. Auto. Ins. Co.*, No. 18-6467, 2019 WL 5551900, at *3 (E.D. La. Oct. 28, 2019) (finding that it was inappropriate to resolve the factual question of whether the plaintiff submitted satisfactory proof of loss at the summary judgment stage).
[117] R. Doc. 65-2 at pp. 21-23; R. Doc. 69-1 at pp. 6-12; *see also* R. Doc. 69-1 at pp. 6-7 ("There is no dispute that Defendant did not pay twenty of the Invoices within thirty days."); R. Doc. 69-2 at ¶¶ 8-12, 14-18, 20, 22, 24-25, 27-28, 30-31, 33-34.
[118] *See supra* at pp. 11-17.
[134] R. Doc. 65.
[135] R. Doc. 65-2 at pp. 16-21.
[136] *Id.* at pp. 21-24.

**IT IS FURTHER ORDERED** that Plaintiff's cross-motion for partial summary judgment that (1) Plaintiff did submit satisfactory proof of loss and (2) Defendant acted arbitrarily, capriciously, or without probable cause is **DENIED**.[137]

**New Orleans, Louisiana, this 21st day of November, 2024.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[137] R. Doc. 69.